414 So.2d 198 (1982)
Dr. John R. RAMEY and Manson, Kuckku and Middkiff, P.A., Individually, and d/b/a Manson Clinic, Appellants,
v.
John FASSOULAS and Edith Fassoulas, Individually and As Husband and Wife, Appellees.
No. 79-1573.
District Court of Appeal of Florida, Third District.
February 23, 1982.
On Rehearing June 8, 1982.
Wicker, Smith, Blomqvist, Davant, Tutan, O'Hara & McCoy and Richard A. Sherman, Miami, for appellants.
Horton, Perse & Ginsberg and Arnold R. Ginsberg, Hawkesworth & Schmick, Miami, for appellees.
Before HUBBART, C.J., HENDRY, J., and PEARSON, TILLMAN (Ret.), Associate Judge.
HUBBART, Chief Judge.
The central issue presented for review by this appeal is whether the parents of a child, who is born as a result of a negligent vasectomy, are entitled in a "wrongful birth" negligence suit to past and future damages for the care and upbringing expenses of the subject child as against the tortfeasor physician who negligently performed the vasectomy. We hold that the parents are not entitled to damages for such past and future rearing expenses  unless the child is born with substantial physical or mental defects, in which event, the parents are entitled to recover the special medical and educational expenses, apart from the normal rearing costs, associated with raising such a child to majority, age 18. We, accordingly, reverse the final judgment entered below and remand for a new trial for failure of the trial court to strike, at least in part, the claim for past and future rearing expenses as to the children born in the instant case.

*199 I
The facts pertinent to the above issue are as follows. On January 18, 1974, the plaintiff John Fassoulas went to the defendant Dr. John R. Ramey, a physician, who was at the time practicing medicine with the defendants Manson, Kuckku, and Midkiff, P.A. for a vasectomy. The plaintiff John Fassoulas and his wife, the plaintiff Edith Fassoulas, had two children at the time, both of whom had been born with congenital defects. The couple had decided, in view of their prior two defective children, not to have any more children and to obtain a vasectomy for Mr. Fassoulas.
The defendant Dr. Ramey performed, as requested, a vasectomy on the plaintiff John Fassoulas. Thereafter, in November, 1974, the plaintiff Edith Fassoulas became pregnant and later gave birth to a daughter, Maria, who was born with many congenital deformities, including an abnormal shaping of the skull, a short neck, redundant skin, and malformations of the hands, with the right hand missing several digits. In addition, Maria was born mentally retarded, is suffering from heart problems and hypertension, and will never be a "normal" child. The plaintiff, Edith Fassoulas, also became pregnant a second time in September 1976 and gave birth to a son, Roussi, who was born with a slight physical deformity. This deformity, however, was corrected almost immediately upon birth and he is now a normal, healthy child. There is no dispute for purposes of this appeal that the defendant Dr. Ramey negligently performed the subject vasectomy and that the birth of the above two children resulted from such negligence.
The plaintiffs, Mr. and Mrs. Fassoulas, brought suit in the Dade County Circuit Court against Dr. Ramey and his professional association based on medical malpractice for the two "wrongful births." The plaintiffs specifically pled various items of consequential damages in their complaint, including a claim for past and future expenses for the care and upbringing of the above-stated two children. The defendants herein moved pretrial to strike the rearing expense claim in the complaint. The trial court at first granted the motion, but later, upon reading additional authority, reversed itself and reinstated the above damage claim. At trial, the court instructed the jury that it could consider, as part of the consequential damages allegedly suffered by the plaintiffs herein, any past and future rearing expenses as to both children.
The jury subsequently returned a special verdict in favor of both plaintiffs, finding the defendants 100 percent negligent with reference to the birth of Maria and 50 percent negligent with reference to the birth of Roussi. The jury assessed damages as to the birth of Maria in the amount of $250,000 for both plaintiffs. As to the birth of the normal child Roussi, the jury awarded the plaintiffs $100,000. The trial court subsequently entered a final judgment in the amount of $250,000 for the plaintiffs as to the birth of the child Maria and $50,000 for the plaintiffs as to the birth of the child Roussi, the latter having been reduced by the plaintiffs' 50 percent comparative negligence. The defendants have prosecuted an appeal from that judgment.

II
The law is clear that the parents of a child have a cause of action sounding in negligence against a physician for performing a negligent vasectomy, sterilization, or abortion [or for otherwise performing negligent medical services] which results in the birth of an unwanted child. Moores v. Lucas, 405 So.2d 1022 (Fla. 5th DCA 1981); Public Health Trust v. Brown, 388 So.2d 1084 (Fla. 3d DCA 1980), pet. for review denied, 399 So.2d 1140 (Fla. 1981); Jackson v. Anderson, 230 So.2d 503 (Fla. 2d DCA 1970). Although the recoverable items of damages tend to be much the same as any other negligence malpractice action, most courts, for good reason, have been reluctant to allow recovery for the cost of raising a child to his or her majority; see authorities collected at Public Health Trust v. Brown, 388 So.2d at 1085; in particular, this court has recently held that such rearing expenses are not recoverable where the child *200 born is otherwise normal and healthy. Public Health Trust v. Brown, supra.[1] Central to this ruling is the court's conclusion that the parents here have not been damaged by being required to raise their own normal, healthy child.

A
First, it is thought that the monetary value of a normal child's services, companionship and support to the parents more than offsets, as a matter of law, whatever rearing expenses may be incurred by the parents in raising such a child. This view is in full accord with the settled law in wrongful death cases that the surviving parents of a minor child, who is negligently killed by a third party, are entitled as damages to the intangible value, which is considerable, of the child's services and support; §§ 768.18(1), 768.21, Fla. Stat. (1979); see e.g., Winner v. Sharp, 43 So.2d 634, 636 (Fla. 1950); Florida East Coast Railroad v. Hayes, 65 Fla. 1, 60 So. 792, 793 (1913); 17 Fla.Jur.2d "Death" § 43 (1980); moreover, no offset has been recognized here for child rearing expenses. See Fla.Std.Jury Instr. (Civil) 6.5, 6.6. Indeed, the courts have consistently sustained high jury awards for the loss of a child's services and support to the parents in such wrongful death cases. See Prosser on Torts 905-10 (4th ed. 1971).
Should a normal child born of a physician's negligence, as here, be killed negligently by a third party in an automobile accident, the parents would be entitled as damages to the value of the child's services and support with no offset for rearing expenses. It is, therefore, not surprising that most courts, including this court, do not allow for rearing expense damages in "wrongful birth" cases where the child born is otherwise normal and healthy. Such expenses are, in contemplation of law, considered de minimus when compared to the high value of the child's services and support.

B
Secondly, it is thought that the payment of normal expenses necessary to raise a child to majority is the sole legal obligation of the parents and in performing that duty it cannot be said that the parents have sustained any damages recognizable by law. Indeed, it has been embedded in our law for centuries that the father and now both parents or legal guardians of a child have the sole obligation of providing the necessaries in raising the child, whether the child be wanted or unwanted. Isaacs v. Deutsch, 80 So.2d 657 (Fla. 1955); Bezanilla v. Bezanilla, 65 So.2d 754, 756 (Fla. 1953); State ex rel. Airston v. Bollinger, 88 Fla. 123, 101 So. 282 (1924); Bullard v. Bullard, 195 So.2d 876 (Fla. 2d DCA 1967); 25 Fla.Jur.2d "Family Law" § 98 (1981); see also §§ 61.13(1), 744.301(1), 744.361(1), Fla. Stat. (1979). Parents who fail to perform this duty may forfeit all parental rights to the child. See e.g., §§ 39.01(1), (2), (9)(a), (27), 39.401 et seq (1979). The courts have, accordingly, been unwilling to walk away from this established law so as to exempt parents, as urged, of their legal obligation to support their children regardless of whether a physician, as here, has performed a negligent vasectomy [or some other similar negligent medical service] which eventually led to the birth of unwanted children. The child is still the child of the parents, not the physician, and it is the parents' legal obligation, not the physician's, to support the child.

C
We are, however, persuaded to make one limited exception to the general bar against rearing expense damages in cases of this nature. Where the child born has substantial mental or physical defects, the tortfeasor physician will be liable in damages for the special medical and educational expenses, as opposed to normal rearing costs, *201 associated with raising such a child to majority, which in Florida is age 18. § 743.07, Fla. Stat. (1979). We are supported in this result by a recent decision of the Fifth District Court of Appeal, Moores v. Lucas, 405 So.2d 1022 (Fla. 5th DCA 1981) (case nos. 80-1360, 81-117, opinion filed October 28, 1981), as well as the emerging view in the country on this subject. See cases collected in Public Health Trust v. Brown, 388 So.2d at 1085 n. 3.
This exception, in our view, is based on the premise that the parents in cases of this nature have been damaged, in part, by the rearing of a child born with substantial mental or physical defects. True, such a child is still the child of the parents, not the physician, and ordinarily should be supported by the parents. Still, the special medical and educational expenses, beyond normal rearing costs, associated with raising such a child are often staggering, creating great financial drain upon the parents. Moreover, the monetary value of the services, companionship and support of such a child is immeasurably less than that of a normal, healthy child as is recognized by the wrongful death cases; see e.g., Davis v. State, 70 Misc.2d 112, 332 N.Y.S.2d 569 (N.Y. Ct. Cl. 1972); Gaccione v. State, 173 Misc. 367, 18 N.Y.S.2d 161 (N.Y. Ct. Cl. 1940); indeed, the financial and emotional drain associated with raising such a child is often overwhelming to the affected parents.
Under the circumstances, then, it is thought not altogether unfair to require the tortfeasor physician to bear the special medical and educational expenses of raising such a child to majority, over and above normal rearing costs. The parents, on the other hand, are still required by the exception to bear the normal rearing expenses of clothing, feeding and housing such a child, thereby still imposing upon them a legal duty to support their child by providing necessaries in accord with our settled law.

D
The prevailing law in this area, as stated above, reflects some of the most fundamental values of our culture which has long honored the institution of the family and cherished the inestimable worth of children. We believe deeply as a people that our children represent the destiny of the country, our best hope for the future, and a treasure beyond compare; we also cling to the belief that parents should support their children, both financially and emotionally, whether the child be wanted or unwanted. The courts have, therefore, been unwilling to look upon child-rearing as a compensable item of damage in cases of this nature, save only in the exceptional case where the child born has substantial mental or physical defects and then only to the extent of the extraordinary medical and educational expenses associated with raising such a child to majority. We reaffirm the established law applicable here today, together with our traditional societal values, in the confident belief that our legal institutions are alive and well and equal to the task of dispensing justice with fairness and common sense.

III
Turning to the instant case, it is clear that the claim for the rearing expenses, both past and future, for the normal child, Roussi, were not recoverable in this action and should have been stricken on proper motion by the trial court. It is equally clear that the claim for the rearing expenses, both past and future, for the substantially mentally and physically defective child, Maria, should have been stricken, but only in part, by the trial court. As to that child, the plaintiffs were not entitled to the normal expenses in raising this child, but were entitled to the special [past and future] medical and educational expenses, over and above normal rearing costs, associated with raising the child to her majority, age 18. The judgment under review is, accordingly, reversed and the cause is remanded to the trial court with directions to order a new trial in accord with the law announced in this decision.
Reversed and remanded.
*202 HENDRY, Judge (dissenting):
The majority decision prohibits the parents from recovering the reasonable forseeable costs of rearing both a normal and an abnormal child from a physician who performed an ineffective vasectomy. I respectfully dissent. I am not persuaded that public policy considerations should be used to deny recovery to parents of an unplanned, healthy child (much less an abnormal child) of all damages proximately caused by a negligently performed sterilization operation. In this regard, see Judge Daniel Pearson's dissent in Public Health Trust v. Brown, 388 So.2d 1084 (Fla. 3d DCA 1980), pet. for rev. den., 399 So.2d 1140 (Fla. 1981). Where the very purpose of the physician's actions is to prevent conception or birth, elementary justice requires that he be held legally responsible for the consequences which have in fact occurred.
The court below instructed the jury that damages could be awarded for pain and suffering, lost wages, and medical expenses. Although the majority decision does not address the propriety of this instruction, I find this a suitable measure of damages recognized in several jurisdictions.[1]
The trial court also allowed the jury to consider the costs necessary to raise the two children to the age of 21. While I do not entirely agree with this standard of recovery because I think the children's situations merit disparate treatment, it is far more just than this court's absolute denial of recovery for Roussi and limited recovery for Maria. A growing number of jurisdictions are allowing parents of healthy, normal children to recover rearing costs in this identical situation.[2]
Judicially created policy considerations should not prohibit the parents from recovering from the negligent physician damages properly pled and proved for either child. Additionally, limiting damages for the special medical and educational expenses of Maria to age 18 is entirely inappropriate in light of the harsh reality that this child will require special care, attention and financial support for her entire life  far beyond her eighteenth birthday.[3] Instructive in this regard are the comments of the court in Sherlock v. Stillwater Clinic, Minn., 260 N.W.2d 169 (1977), which awarded the parents the costs of raising their healthy, normal child born of a negligently performed sterilization:
In the case of a normal, healthy child, we would anticipate that these expenses [rearing costs] could not ordinarily be projected beyond the age of his majority, for it is at that age that the parental duty to support ceases.
260 N.W.2d 176. In a footnote, however, the court qualified this statement where the child is born with abnormalities:
Should the unplanned child be born with congenital deformities, the parental support obligation could, of course, extend *203 beyond the date that the child reaches his majority.
260 N.W.2d 176, fn. 11.
Ideally, then, in the present situation the court should be instructed to assess costs of raising the normal, healthy child to majority (age 18 in this state), assess the reasonable costs of supporting the abnormal child for its natural life span, and allow an offset for the value of the children's aid, comfort and society.[4]
Having stated what I consider to be the ideal solution, however, based upon the record before us, I would affirm the verdict and judgment below. In any event, remand for a new trial should be limited solely to the issue of damages since the finding of liability has not been challenged on appeal.

ON REHEARING
PER CURIAM.
Plaintiffs have filed a motion for rehearing and clarification which we grant in part; the new trial, which we order upon remand in this cause, shall be for damages only. The basis for our reversal herein of the judgment appealed from goes solely to the damages issue tried below, not the liability issue, which was, in effect, conceded by the defendants for appellate purposes; in fairness, then, the new trial ordered herein should be confined to damages only.
We recognize that the defendants herein have a remaining point on appeal which, it is claimed, warrants a new trial on all issues. We neglected to rule on that point in our initial decision, but do so now by rejecting it as presenting no reversible error. As such, there was no error committed below with respect to the liability issue and, therefore, no need for a retrial on that issue.
In all other respects, the motion for rehearing and clarification is denied. The judgment appealed from is, accordingly, reversed and the cause is remanded to the trial court with directions to order a new trial as to damages only.
NOTES
[1] In all fairness to the able trial judge, it should be noted that the Public Health Trust decision was rendered subsequent to the trial in this cause and was not available to the judge when he was called upon to rule on the issues confronting him in this case. Also, the Moores decision, cited above, was rendered subsequent to the trial herein and was similarly unavailable to the trial judge below.
[1] See Custodia v. Bauer, 251 Cal. App.2d 303, 59 Cal. Rptr. 463 (1967); Coleman v. Garrison, 349 A.2d 8 (Del. 1975); Cox v. Stretton, 77 Misc.2d 155, 352 N.Y.S.2d 834 (Sup.Ct. 1974); Rivera v. State, 94 Misc.2d 157, 404 N.Y.S.2d 950 (Ct.Cl. 1978); Bowman v. Davis, 48 Ohio St.2d 41, 356 N.E.2d 496 (1976); Garwood v. Locke, 552 S.W.2d 892 (Tex.Civ.App. 1977).
[2] See, e.g., Stills v. Gratton, 55 Cal. App.3d 698, 127 Cal. Rptr. 652 (1976) (recovery for all damages under ordinary tort principles reduced by benefits conferred for healthy child born following negligently performed abortion); Custodia v. Bauer, supra, (recovery for rearing costs for healthy child born of a failed sterilization operation); Cox v. Stretton, supra, (same); Rivera v. State, supra (same); Bowman v. Davis, 48 Ohio St.2d 41, 356 N.E.2d 496 (1976) (same); Anonymous v. Hospital, 33 Conn.Sup. 125, 126, 366 A.2d 204 (1976) (recovery for expenses in rearing of healthy, normal child born of a negligently performed sterilization offset by value of the child's aid, comfort and society); Troppi v. Scarf, 31 Mich. App. 240, 187 N.W.2d 511 (1971) (same); Betancourt v. Gaylor, 136 N.J. Super. 69, 344 A.2d 336 (1975) (same).
[3] Dissolution of marriage cases also recognize an exception to the general rule requiring child support only during the child's minority where the child is, as a result of physical or mental deficiencies, unable to support himself. See Perla v. Perla, 58 So.2d 689 (Fla. 1952); Kern v. Kern, 360 So.2d 482 (Fla. 4th DCA 1978); Krogen v. Krogen, 320 So.2d 483 (Fla. 3d DCA 1975); Fincham v. Levin, 155 So.2d 883 (Fla. 1st DCA 1963).
[4] This offset is in accordance with Section 920, Restatement (Second) of Torts (1979), which provides for a reduction of damages correspondent to any benefit which a tortfeasor has bestowed upon his victim.