443 So.2d 437 (1984)
Hyman ASH, Guardian of the Person of Aaron Ash, Incompetent, Appellant,
v.
COCONUT GROVE BANK, Guardian of the Property of Aaron Ash, Incompetent, and Patricia Ash, Appellees.
No. 82-1853.
District Court of Appeal of Florida, Third District.
January 10, 1984.
*438 Levin & Fishman and Jack Fishman, Miami, for appellant.
Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern and Michael P. Andersen and Harold Braxton, Miami, for appellees.
Before SCHWARTZ, C.J., and NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
As the result of obstetrical malpractice, Aaron Ash was born profoundly and permanently retarded  both mentally and physically. The parents were divorced several years later and the husband was granted custody of the child. Pursuant to the terms of the property settlement agreement, the husband agreed to bear the expenses incurred in connection with raising his son. Subsequently, a lawsuit instituted on behalf of the child to recover for malpractice resulted in a settlement in excess of one million dollars. The entire proceeds were utilized to establish a guardianship over which the Coconut Grove Bank was appointed guardian of the property.
The instant appeal arises out of a petition in the trial court by the father seeking reimbursement from the guardianship for expenses incurred in connection with the support, care, maintenance and education of the child. The probate court granted the petition, but disallowed some of the expenses. The father appeals challenging the adequacy of the award; the mother and guardian of the property cross-appeal claiming that no reimbursement should have been granted. In order to resolve the issues presented by this appeal, it is necessary to relate common law principles of parent and child to existing guardianship statutes.
Under the common law, a parent or legal guardian has the sole obligation to provide his child with the necessities until he reaches the age of majority. State v. Winters, 346 So.2d 991 (Fla. 1977); Ramey v. Fassoulas, 414 So.2d 198 (Fla. 3d DCA 1982). However, an exception to the rule of parental responsibility arises in instances where a trust has been set up to discharge that obligation. Bordman v. Bordman, 231 So.2d 543 (Fla. 3d DCA 1970) (trust for "sole benefit" of child); Carmody v. Carmody, 230 So.2d 40 (Fla. 1st DCA 1970) (trust funded by personal injury judgment). *439 In that event, the parent's duty is alleviated to the extent contemplated by the trust. In other words, if the trust is created for the express purpose of educating the child, then the parent is relieved of his responsibility only as to that particular expense. If, in the future, the trust becomes depleted, then the parent must once again provide for his child.
Another dimension is added where, as here, the minor child has received a settlement of a personal injury claim. In that situation, section 744.387(2), Florida Statutes (1981) provides that a legal guardianship of the property shall be required when the amount of the net settlement to the ward exceeds $5,000. This fund does not displace the parent's duty to care for his child. To the contrary, section 744.397(3), Florida Statutes (1981) provides that:
If the ward is a minor and his parents are able to care for him and to support, maintain, and educate him, the guardian of the property of the minor shall not so use his ward's property unless directed or authorized to do so by the court.
Such authorization will be granted cautiously inasmuch as the parents might one day be unable to care for the minor, at which time the guardianship would become the child's sole means of support, and in any event once the child reaches eighteen, the guardianship estate will be utilized for his support.[1]
With this as a background, we turn to the present case. The settlement entered into by the father, individually, and as next friend of his son, Aaron, necessarily contemplated those items of damages which he would have been entitled to recover individually as well as those to which Aaron was entitled. For the father, these included medical, educational and other special expenses incurred in raising a mentally or physically handicapped child, see Ramey v. Fassoulas at 200, Fla.Std. Jury Instr. (Civ.) 6.2(c); and for Aaron it included recovery for bodily injury, pain and suffering and loss of earning capacity, see Fla.Std. Jury Instr. (Civ.) 6.2(a), (d). Despite the fact that the guardianship laws only require that the ward's settlement be placed in a guardianship, the father placed the entire settlement proceeds in his son's estate. Having done so, we conclude that that portion of the settlement award which represented the father's claim for the extraordinary expenses relating to his son's condition should be treated as a trust to defray these contemplated expenses. Accordingly, the father will be relieved of this duty as long as funds exist in the trust. With respect to the normal expenses of childrearing, the father remains primarily obligated under both the common law and the property settlement agreement and cannot utilize the trust for these expenses.
Because, as we have previously stated, the guardianship funds of the child may not be utilized by a parent in the absence of court approval (which should be cautiously granted), it is necessary that an allocation be made between the trust funds which are accessible to the father for extraordinary expenses and the general guardianship assets. Were we to ignore this distinction, the possibility exists that the minor's guardianship estate would be exhausted while the parents had other funds available to care for the child and then, when the parents' resources are depleted, the child would be left without a guardianship estate. Consequently, on remand, the trial court must distinguish the trust assets from the guardianship estate.
Turning to the trust, the trial court must determine the more difficult issue as to which of the expenses of rearing Aaron are extraordinary and which would be incurred in raising a normal child. Such a division must contemplate those expenses for such things as food, clothing and shelter, which all parents would expect in childrearing as compared to expenses incurred for a mentally or physically defective child for such *440 things as medical bills, therapy and special schools. It must then consider these factors in light of the parents' financial position since it is surely true that "normal" and "extraordinary" will have varying connotations according to one's financial position. Finally, such a determination must be gauged by the rule of reasonableness. In deciding what is reasonable, the probate judge should also weigh and consider the possibility that the trust may be depleted; Aaron's somewhat affluent parents may not always enjoy that status; and at some future point, the child would then have to depend upon his guardianship funds for his sole support.
Reversed and remanded with directions.
NOTES
[1] Should the guardianship later be exhausted and by virtue of his mental or physical disability the individual is still unable to support himself, the parent must resume responsibility. See § 743.07(2), Fla. Stat. (1981).