547 So.2d 170 (1989)
Paul M. BURDEN and Evelyn Burden, Appellants,
v.
Robert J. DICKMAN, Guardian Ad Litem of Adam Paul Burden, Appellee.
No. 88-2190.
District Court of Appeal of Florida, Third District.
June 6, 1989.
Rehearing Denied September 1, 1989.
*171 Horton, Perse & Ginsberg and Mallory H. Horton, Miami, for appellants.
Robert J. Dickman, P.A., Coral Gables, and Karen Bzdyk, for appellee.
Before JORGENSON, COPE and LEVY, JJ.
JORGENSON, Judge.
Paul and Evelyn Burden appeal an order denying their motion to dismiss a petition for accounting, to vacate the order granting the petition, and to discharge the guardian ad litem appointed on behalf of their minor child, Adam. We affirm.
The Burdens brought a medical malpractice action in the United States District Court for the Southern District of Florida, seeking damages individually and as next friends of Adam. The government conceded that the failure of Air Force physicians to recognize and to diagnose properly Adam's diabetes was negligent and that such negligence was the proximate cause of Adam's brain damage and resulting cerebral palsy.[1]
After a non-jury trial on the issue of damages, the trial court entered two awards, one in favor of Adam, the other in favor of the Burdens. Adam was awarded the sum of $1,000,000 as compensation for "past pain and suffering, loss of earning capacity and special damages upon attaining the age of 18 years." The trial court specifically noted that the amount did not include "support care," the substantial portion of which would be reimbursable to the parents until Adam reached the age of eighteen. The Burdens were awarded the sum of $1,500,000 "for all past and future medical, hospital, nursing services, and all educational and other expenditures on behalf of Adam and the loss of companionship [the parents] suffered and will suffer."[2] *172 Judgment was entered accordingly.
The United States government paid the judgments. The Burdens thereafter filed a petition in the probate division of the circuit court for Dade County seeking appointment as joint guardians of Adam's property. The petition described Adam's property as the net proceeds of the $1,000,000 award. The probate court appointed Northern Trust Bank of Florida, N.A., as guardian of the property. Two weeks after the net proceeds were distributed to the corporate fiduciary, the probate court appointed a guardian ad litem for Adam pursuant to Florida Rule of Probate and Guardianship Procedure 5.120, Florida Rule of Civil Procedure 1.210(b), and section 744.387, Florida Statutes (1987). In his report to the court, the guardian ad litem expressed his concern that the Burdens' award of $1,500,000 was undifferentiated. The guardian recommended that an allocation be made between that portion of the award compensating the parents for their claim of loss of support and services and that portion which should be held in trust and used to defray the increased medical and support expenses incurred during Adam's minority. Nothing in the record indicates that any action was taken regarding an allocation. The guardian subsequently filed a petition for an accounting, requesting that the probate court order the Burdens, as natural and legal guardians of Adam, to account for the funds held on their son's behalf for medical care and support. The probate court granted the petition, whereupon the Burdens sought to have the order vacated, the petition dismissed, and the guardian ad litem discharged on the ground that the probate court lacked both personal jurisdiction of Adam and the Burdens and subject matter jurisdiction of the Burdens' award. The order of the probate court denying the Burdens' motion is the subject of this appeal.
In considering the Burdens' challenge of the appointment of the guardian ad litem, we are mindful that the federal trial court which presided during the Burdens' litigation has cogently observed that guardianship law generally is not within the federal courts' area of skill but "has historically been peculiarly within the expertise of the state courts." Comas v. Southern Bell Tel. & Tel. Co., 657 F. Supp. 117, 118 (S.D.Fla. 1987). Further, "although jurisdiction vests in [the federal district court] as the trial judge, the primary responsibility for the welfare of the minor is that of the guardianship judge." Id. at 117. See also Phillips v. Nationwide Mut. Ins. Co., 347 So.2d 465 (Fla. 2d DCA 1977) (circuit court has inherent jurisdiction and right to protect minors and their property); art. V, § 5, Fla. Const.; ch. 744, Fla. Stat. (1987). The role of a guardian ad litem is to defend the interests of the individual he represents. Fla. R.P. & G.P. 5.120(a). Appointment of a guardian ad litem is mandated where the interest of the guardian is adverse to that of the ward, § 744.391, Fla. Stat. (1987), no less so when a natural guardian is involved. Accordingly, we affirm that portion of the trial court's order denying the Burdens' motion to discharge the guardian ad litem.
We find that the probate court has personal jurisdiction of the parents in this action. The Burdens affirmatively sought the court's jurisdiction to administer the guardianship of Adam's property. By petitioning the probate court to be appointed joint guardians of the property, the Burdens submitted themselves to the court's jurisdiction. They cannot now be heard to allege lack of personal jurisdiction. See Palm Beach Towers, Inc. v. Korn, 400 So.2d 110 (Fla. 4th DCA 1981) (general rule that plaintiff, in bringing action, subjects himself to jurisdiction of court and to subsequent lawful orders entered regarding subject matter of action); see also Glass v. Layton, 140 Fla. 522, 192 So. 330 (1937) (by bringing partition action, plaintiff subjected herself to jurisdiction of court); Brasch v. Brasch, 109 So.2d 584 (Fla. 3d DCA), *173 cert. dismissed sub nom. High v. Brasch, 114 So.2d 796 (Fla. 1959).
The Burdens' assertion that the probate court lacked personal jurisdiction over Adam on the ground of nonresidency is similarly without merit. While it is true that Adam has never been a resident of or domiciled in Florida, section 744.308(1), Florida Statutes (1987), expressly provides for the guardianship of a nonresident incompetent. Junco v. Suarez-Solis, 294 So.2d 334 (Fla. 3d DCA 1974), does not support the Burdens' jurisdictional argument. Junco involved a misplaced attempt to establish a guardianship for a nonresident minor who had no real or personal property within Florida. By contrast, Adam has substantial assets located in this state.
The Burdens concede that the probate court has subject matter jurisdiction over the $1,000,000 award to Adam but contend that the award of $1,500,000 "was not made to or for the minor child, it was not made to the parents for the minor child, but was in the form of compensation to the parents." It has long been the rule in Florida
that the parent, or guardian, of an unemancipated minor child, injured by the tortious act of another, has a cause of action in his own name for medical, hospital, and related expenditures, indirect economic losses such as income lost by the parent in caring for the child, and for the loss of the child's companionship, society, and services, including personal services to the parent and income which the child might earn for the direct and indirect benefit of the parent.
Yordon v. Savage, 279 So.2d 844, 846 (Fla. 1973) (citing Wilkie v. Roberts, 91 Fla. 1064, 109 So. 225 (1926)); see also Youngblood v. Taylor, 89 So.2d 503 (Fla. 1956) (parents' right of action for recovery of loss of child's services and medical expenses is independent of child's right of action arising from same tortious incident); Tucker v. Shelby Mut. Ins. Co., 343 So.2d 1357 (Fla. 1st DCA 1977) (same); City Stores Co. v. Langer, 308 So.2d 621 (Fla.3d DCA), rev. dismissed, 312 So.2d 758 (Fla. 1975) (same). The existence of an independent right of action derives from the parents' common law duty to support and maintain their child during minority. See State v. Winters, 346 So.2d 991 (Fla. 1977) (parent has duty to provide child with food, clothing, shelter, and medical treatment); Albert v. Albert, 415 So.2d 818 (Fla. 2d DCA 1982) (obligation of support based upon parentage), rev. denied, 424 So.2d 760 (Fla. 1983); Cronebaugh v. Van Dyke, 415 So.2d 738 (Fla. 5th DCA 1982) (parental duty to support minor child is created by law and obligation of support cannot be bargained or stipulated away), rev. denied, 426 So.2d 25 (Fla. 1983). Child support itself, however, "is a right that belongs to the child." Cronebaugh, 415 So.2d at 741. Just as "[p]rovisions in dissolution settlement agreements ... are not the basis for the right to child support[,]" id., the recovery of an award of damages in favor of the parents of an injured child does not create parental ownership of that award.[3] As Adam's parents, the Burdens bear a heavy responsibility in rearing
a child born with substantial mental or physical defects. True, such a child is still the child of the parents, not the *174 [tortfeasor] ... and ordinarily should be supported by the parents. Still, the special medical and educational expenses, beyond normal rearing costs, associated with raising such a child are often staggering, creating great financial drain upon the parents.
Ramey v. Fassoulas, 414 So.2d 198, 201 (Fla. 3d DCA 1982), approved, 450 So.2d 822 (Fla. 1984). We have recognized that parents are responsible for normal child-rearing expenses and that funds received on behalf of the ward should be treated as guardianship funds to be drawn upon with court approval for those extraordinary expenses which the ward may require. Ash v. Coconut Grove Bank, 443 So.2d 437 (Fla. 3d DCA 1984).
It is those special medical and educational expenses of raising Adam to majority, as opposed to normal rearing costs, that occasioned the now-contested award. The undifferentiated award detailed the prospective extraordinary medical and support expenses expected during Adam's minority:
Medical & Hospital
* * * * * *
Adam will require periodic examinations and evaluations by pediatricians, neurologists and psychologists. He will require the services of physical, occupational and speech therapists.

Educational Assistance and Support Care

In order to help Adam develop to his intellectual potential he will require the help of an instructor or aide a few hours a day until he reaches the age 13 to 15. Educational toys and games would be helpful. Adam will require a houseworker part of the morning and afternoon to help him with his personal needs, i.e., to dress him, brush his teeth, comb his hair and an LPN to care for him one weekend a month to relieve the parents of the burden for that time.
* * * * * *
Dental Services
The need of Adam for dental services is 3 to 4 times greater than that of a normal child. Adam will require orthodontic treatment at an early age.
Special Equipment
Adam will require special orthopedic equipment. He will be bound to a wheelchair. He will require instruction on how to use an electric wheelchair. The home in which the Burden's will live ... will have to provide ramps, railings, special toilet facilities, etc.
To alleviate the financial drain, the tortfeasor has been made to bear the cost of the extraordinary care. The claim to recover monies for that care lay with the Burdens, but the right to the care and support belongs to Adam.
Although the guardian ad litem did not pursue the question of allocating the $1,500,000 award, having initially recommended such action to the probate court, the matter of a judgment allocation "is one that can and must be entertained by the court at any time." Orkin Extermination Co. v. Lazarus, 512 So.2d 1120, 1121 n. 1 (Fla. 3d DCA 1987). In Orkin we held that a tort defendant was entitled to allocation of a judgment awarding undifferentiated damages to minor children and their parents even though the defendant failed to raise the issue timely. The cause was remanded to the trial court to appoint a guardian ad litem on behalf of the minor children and to conduct a hearing to ascertain that portion of the judgment to which each child was entitled.
Similarly, in Florida Power & Light Co. v. Macias, 507 So.2d 1113 (Fla. 3d DCA), rev. dismissed, 513 So.2d 1060 (Fla.), rev. denied, 518 So.2d 1276 (Fla. 1987), we reversed the trial court's allocation of a lump sum settlement and remanded with directions to appoint a guardian ad litem to represent the minor child's interests in seeking compensation from the common fund. In Buncayo v. Dribin, 533 So.2d 935 (Fla. 3d DCA 1988), we affirmed an order of the trial court reducing the parents' portion of a gross settlement from $400,000 to $250,000 on the ground that the trial court's decision was made in the best interests of the injured minor child.
*175 Consistent with our holdings in Ash, Orkin, Macias, and Buncayo, we affirm the remainder of the probate court's order. In light of our directions, however, the trial court may determine that a formal accounting is unnecessary. We remand with directions for the probate court to conduct an allocation hearing at which the Burdens and the guardian ad litem may offer evidence on the proper apportionment of the $1,500,000 award.[4] That sum which is determined to be compensation for the Burdens' loss of companionship and reimbursement for past medical expenses will be the Burdens' property, to which they are immediately entitled. Sums which the Burdens have expended to meet Adam's extraordinary support needs to date should be reimbursed. The remaining funds are to be sheltered in a guardianship or trust account from which the Burdens may continue to seek reimbursement for Adam's extraordinary expenses until his majority as outlined in the federal trial court's memorandum of decision.[5] Our opinion should not be read to prohibit the Burdens' appointment as guardians or trustees of the sheltered funds, solely or in conjunction with a corporate fiduciary.
Affirmed and remanded with directions.
NOTES
[1] In its memorandum of decision, the federal district court related the scope and tragic consequences of Adam's injuries.

The damage to Adam's brain caused by the negligence of the Government's employees was the loss of brain tissue in the area that controls motor function. His loss of motor function severely limits his ability to sit and walk. He is spastic on both sides of his body. The muscles and tendons are too tight. His motor coordination is faulty. He is unable to pass things from one hand to the other. He has difficulty controlling his tongue which results in difficulty in swallowing food. At age 32 months he had an I.Q. of a child of 17 months and is classified as mildly retarded.
The injury will impose severe limitations on normal physical activities. He will never be able to walk without the aid of a walker or crutches. He will find it difficult to communicate with others. His speech will be slurred and generally unintelligible to others. He will be unable to take care of his personal needs.
The risk of dying as a result of seizures, [sic] (the use of anticonvulsant drugs is required) and of choking because of the dysfunction of the tongue and muscles of the throat is increased. Adam is more vulnerable to infection and his body is less able to respond to infection and disease.
* * * * * *
I find that Adam is expected to live to age 30. At 3 years of age his life expectancy is 27 years.
[2] After deducting costs and attorney's fees, Adam's award was reduced to $708,000; his parents' award was reduced to $1,019,000.
[3] But see 3 Restatement of Torts § 703 (1938); 2 F. Harper, F. James & O. Gray, The Law of Torts § 8.8 (2d ed. 1956); Annotation, What items of damages on account of personal injury to infant belong to him, and what to parent, 32 A.L.R.2d 1060 (1953). The few Florida cases that address the scope of sums recovered by parents in tort actions have limited parental awards and are entirely silent on the question of ownership of the sums awarded. In Miami Paper Co. v. Johnston, 58 So.2d 869 (Fla. 1952), the supreme court affirmed a $25,000 judgment in favor of the minor child but reversed the father's $10,000 judgment where the evidence at trial showed the father had incurred past medical expenses of $435 and one prospective expense not to exceed $1,500. See also Brown v. Caldwell, 389 So.2d 287 (Fla. 1st DCA 1980) (parent allowed to recover liquidated sum of $3,017 for loss of child's services and medical expenses); Hillsborough County School Bd. v. Perez, 385 So.2d 177 (Fla. 2d DCA 1980) ($20,000 award of damages to parents vacated on ground that uncontroverted evidence supported award of past medical expenses of $5,815, loss of services of $240, and future medical expenses of $3,000 for few months remaining until child reached majority).
[4] In its assessment of damages in favor of the parents, the federal trial court awarded a liquidated sum of $5,294 for past medical expenses, an amount properly reimbursable to the parents. Wilkie v. Roberts, 91 Fla. 1064, 109 So. 225 (1926). The trial court also awarded an undifferentiated sum for the parents' loss of companionship, an amount in which the parents can be said to have an exclusive interest. Cf. Rosen v. Zorzos, 449 So.2d 359 (Fla. 5th DCA 1984) (Florida recognizes right of parent to sue for loss of companionship of minor child wrongfully injured), rev'd on other grounds, 467 So.2d 305 (Fla. 1985), but cf. In re Standard Jury Instructions Civil Cases, 503 So.2d 319 (Fla. 1987), and cases cited therein.
[5] The $1,000,000 award to Adam is inextricably bound up with the $1,500,000 award to the Burdens on Adam's behalf. Exhaustion of the latter award prior to Adam's majority would inevitably force an application for early access to the funds presently held in trust for Adam in this jurisdiction. Such a result would place the trial court and the guardian ad litem in an untenable position: to act on the application would risk premature depletion of Adam's postmajority award, while to ignore the request would manifest indifference to Adam's needs notwithstanding the availability of substantial guardianship funds. Accordingly, the disposition outlined above is essential for the proper administration of the Florida guardianship from this point forward. The trial court, having in personam jurisdiction of the parties, is empowered to effectuate relief and may take action with respect to assets held by the parties within, as well as outside of, this jurisdiction. LeMire v. Galloway, 130 Fla. 101, 177 So. 283, 286 (1937).