547 So.2d 1241 (1989)
Shirlee R. LESTER, Appellant,
v.
Thomas J. LESTER, Appellee.
No. 87-1152.
District Court of Appeal of Florida, Fourth District.
July 26, 1989.
Rehearing Denied September 21, 1989.
Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, and Suto & Sider P.A., Boca Raton, for appellant.
John T. Christiansen of Christiansen, Jacknin & Tuthill, West Palm Beach, for appellee.
LETTS, Judge.
After the dissolution of a twenty-three year marriage, the wife, aged fifty-two, appeals the award of only an unencumbered $350,000 house, $500,000 in lump sum alimony and $225,000 in exchange for some antique automobiles earlier given to her by the husband. The wife's C.P.A. valued the husband's net worth at $11,000,000. We affirm.
The husband, aged sixty-seven at the time of the dissolution, founded a tool and die business worth approximately $900,000 at the time of the marriage. He sold it some considerable time before the dissolution for approximately $14,000,000, although he was only worth $11,000,000 at the time of the dissolution. The wife entered into the marriage penniless, having last worked as a hat-check girl. During the marriage, she did not work, nor did the husband expect her to do so, but he gave her stock and antique automobiles which, augmented by the lump sum alimony and *1242 the house, caused her to leave the marriage with a net worth of some $3,500,000.[1]
There were no children born of this union, and while the husband had four children by a prior marriage, the wife (this was her fourth marriage, twice to this husband) was not a force in rearing those children, according to the trial judge. The wife did not contribute to the growth in value, or the operation of the husband's business, that growth being attributed solely to the husband's genius, to the expertise of one of his key employees and to the increased custom of the same basic list of clients which he serviced prior to the marriage (e.g., General Motors, Ford, Black & Decker).
The trial judge also found that the wife "is a 52 year old, very attractive, articulate woman who ... has developed a high ornamental lifestyle ... [which] has, throughout the marriage, included fine homes, servants, butlers, cooks and all of the accompanying assistants incidental to the wealthy status which the parties have carved out for themselves."
Among other things, when this appeal was filed, the wife was claiming error because the trial court failed to award permanent periodic alimony; however, that particular claim has been mooted by her remarriage.
The main remaining point concerns the trial court's finding that "the evidence fails to sustain the wife's right to any equitable interest in the assets of the husband." We agree this was an unfortunate choice of words, but the final judgment as a whole reflects a permissible equitable distribution, or as the trial judge put it: "provided for her in a fair and reasonable manner."
To begin with, we do not agree with the wife's contention that the "gift" of $2,500,000[2] made to the wife during the marriage cannot be taken into account when considering an equitable distribution. The folly in ignoring such a gift can best be demonstrated by way of example. The wife here claims that the $2,500,000 is part of her "separate estate," not a marital asset, and not distributable (not even the accretion thereof in value). According to that premise, if the husband had given her $10,000,000, she would still be entitled to a marital distribution out of the remaining $1,000,000. Such a result would be inequitable and we conclude that major "gifts" from one spouse to another should be includable in any marital estate when calculating an equitable distribution. But see Tyler v. Tyler, 427 So.2d 1027 (Fla. 2d DCA 1983).
We also have no difficulty in deciding that the value of the husband's marital estate should be calculated at $11,000,000, less only the $900,000 which the business was worth prior to the marriage. The husband argues that the growth in value was "passive." We do not find it so. This man was a recognized genius in his field and was firmly engaged in actively running his business until the time of sale.
On the other hand, placing the husband's marital estate at $10,100,000 and the entire marital estate at $13,600,000 does not automatically mean that the wife is entitled to half that total sum. Ours is not a community property state. Returning to the wellspring of Canakaris,[3] it is set forth there that the equitable distribution to be made in a long-term marriage depends on the degree of contribution by each spouse to the marital estate. Id. at 1204. Indeed, in Canakaris, the approved distribution was much less than twenty-five *1243 percent to the wife. Turning our attention to the marital estate now before us, this woman was not a conventional housewife or mother. Her services as a homemaker and her contribution to the marital estate was modest. As described by the trial judge, her role was that of an ornament. It is true she was an officer in the husband's corporate enterprise up until the time of sale, but it is clear from the record that she played little or no part in the running thereof, or in the attracting of, or the keeping of, its bedrock clientele. Of the $13,600,000 whole, she received $3,500,000 or twenty-five percent. There is a plethora of cases, their ranks now swelled by what we do here, approving such a percentage distribution even where a more traditional housewife and mother is involved.[4]
We also consider whether the wife has passed "from prosperity to misfortune," Canakaris, 382 So.2d at 1204, and conclude she has not. To emerge from a marriage with $3,500,000 would be considered, in financial terms, by almost all U.S. citizens, as amazing, good fortune. Maybe the wife's standard of living will not be quite so lavish as it was, but, even without reference to her remarriage, it can continue at a level far above the dreams of ordinary, or even extraordinary, mortals. We find no abuse of discretion here.
Finally, on the question of attorney's fees, the trial judge ordered each spouse to pay his or her own. We agree that the husband is in a superior position to shoulder this entire burden, but we also agree that the wife is well able to fend for herself. This being so, we do not find that the trial judge abused his discretion in this, or any other regard. This cause is affirmed.
AFFIRMED.
LETTS, J., and SNYDER, ARTHUR I., Associate Judge, concur.
GLICKSTEIN, J., concurring specially with opinion.
GLICKSTEIN, Judge, concurring specially.
I, too, conclude that affirmance is proper, inasmuch as the trial court acted within its reasonable discretion.
Because of a recent addition to Florida dissolution of marriage law, interspousal gifts during marriage are now regarded as marital assets for equitable distribution purposes. § 61.075(3)(a)3, Fla. Stat. (Supp. 1988). This statutory addition, which became effective prospectively on October 1, 1988, was not applicable in the instant case. Other important provisions of the same new statutory section on equitable distribution of marital assets and liabilities either codify previous case law or constitute new Florida law.
I call attention to the section for future reference, in case members of bench and bar have overlooked its enactment.
NOTES
[1] We make no apology for rounding off the values of the various assets. The figures offered by the accountants for both parties are at such variance as to appear incredible, considering accounting is supposed to be an exact science. For example, the wife values the husband's estate at $11,159,333, while the husband values it at only $7,431,749. This enormous disparity caused the trial judge to find that the husband was worth "anywhere from $9,000,000 to $12,000,000." Our selection of $11,000,000, for the purpose of this opinion, favors the wife's evaluation.
[2] This includes the stock, its increase in value and the $225,000 awarded in exchange for the antique automobiles.
[3] Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
[4] Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Marston v. Marston, 484 So.2d 32 (Fla. 1986), review denied, 494 So.2d 1151 (Fla. 1986); Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981); DiPrima v. DiPrima, 435 So.2d 876 (Fla. 5th DCA 1983), review denied, 447 So.2d 886 (Fla. 1984); Geisinger v. Geisinger, 436 So.2d 439 (Fla. 4th DCA 1983); Dewberry v. Dewberry, 455 So.2d 420 (Fla. 2d DCA 1984); Casto v. Casto, 458 So.2d 290 (Fla. 4th DCA 1982), aff'd, 508 So.2d 330 (Fla. 1987); Condren v. Condren, 475 So.2d 268 (Fla. 2d DCA 1985).