602 So.2d 652 (1992)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, CHILD SUPPORT ENFORCEMENT, etc., Appellant,
v.
Robert Lee HOLLAND, Appellee.
No. 91-2148.
District Court of Appeal of Florida, Fifth District.
July 10, 1992.
*653 Amanda Traweek of Carlton & Carlton, P.A., Lakeland, for appellant.
Peter A. Collins of Law Offices of Peter A. Collins, Coral Gables, for appellee.
COWART, Judge.
The Department of Health and Rehabilitative Services, Child Support Enforcement (HRS) filed a motion on behalf of a mother (former wife) against a father (former husband) seeking to recover alleged child support arrearages. The trial court found and held that the child support in question related to arrearages accruing after the children *654 reached 18 years of age, and held that under those circumstances and under Cronebaugh v. Van Dyke, 415 So.2d 738 (Fla. 5th DCA 1982), rev. denied, 426 So.2d 25 (Fla. 1983), the cause of action to enforce the father's child support obligations and to collect those arrearages belonged to the children and that their mother, as such, did not have standing to enforce the children's rights and to collect from their father the money due the children. Accordingly, because the mother did not have the right or standing to collect the support due the children from their father, neither did HRS have the right or standing to collect those sums on behalf of the former wife. HRS appeals citing H.R.S. v. Blue, 564 So.2d 243 (Fla. 5th DCA 1990). We affirm.
Blue involved post-majority enforcement of pre-majority arrearages. This instant case involves post-majority enforcement of post-majority arrearages and is controlled by Cronebaugh. See also Turner v. Turner, 553 So.2d 1385 (Fla. 5th DCA 1990) and Friedman v. Friedman, 508 So.2d 781 (Fla. 4th DCA 1987).
There are several sources for the duty to pay child support. The duty can be strictly legal based on common law or statute (§ 61.13(1), Fla. Stat.) or it can be strictly contractual, or it can be a confusion of both. See, Simpson v. Simpson, 108 So.2d 632 (Fla. 2d DCA 1959); Ciociola v. Ciociola, 302 So.2d 462 (Fla. 3d DCA 1974). Separation agreements appurtenant to dissolution actions are often of the last category. The distinction between purely law-imposed duties and purely contractually-assumed duties should be more meaningful but they are blurred by two practices. The first practice is of using agreements to contract as to the amount satisfactory to discharge a duty imposed by statute or common law. The other practice is that of having a court approve and order payment of purely contract based duties. Agreements that merely recognize a legal (statutory or common law) duty and contract as to an amount cannot limit the duty imposed by law and the legal duty of parental support is always subject to court enforcement, any contract provision to the contrary notwithstanding. However, purely contract-based duties cannot be impaired by "modifications" by the court and are enforceable in the same manner as any other contract obligation. Confusion results from the practice of having a trial court approve an agreement relative to child support, and ordering payment, without distinctions as to, or appreciation for the difference between, support agreements merely quantifying the amount correctly necessary to discharge a legal (statutory or common law) duty and agreements establishing a purely contractual duty to pay an agreed amount of child support. Agreements to pay support after the children's legal majority, as for college costs, are examples of the latter type. Regardless of the basis for the support duty, legal or contractual, the child is the beneficiary and the real party in interest (see Florida Rule of Civil Procedure 1.210(a)) and the proper person to enforce the obligation except only when it is under the legal disability of non-age which is, of course, the common case, and it is only then that some other person, such as guardian, trustee, next of friend, or a party with whom or in whose name a contract has been made for the benefit of the child, or a party expressly authorized by statute, may sue without joining the child for whose benefit the action to collect child support is brought. See especially Florida Rule of Civil Procedure 1.210(b).
We are aware that others have sometimes questioned or disagreed with Cronebaugh[1] and have shown inclinations to prefer a contrary view. However, the supreme court denied review in Cronebaugh and we continue to believe and to hold that (1) under law only one cause of action exists in one entity or person at one time; (2) that a child for whom child support is due from a parent is the equitable and legal beneficiary and the real party in interest and in legal contemplation owns the cause of action to recover monies due *655 for its support;[2] (3) when a child is under legal disability of non-age or otherwise, the mother, or anyone else, who is the lawful custodial or legal guardian for the child or even a next of friend, is entitled to collect child support money owned by the parent to discharge a legal duty for child support (Fla.R.Civ.P. 1.210(b)). In such cases, the guardian or trustee, next of friend, etc., (whether or not also a parent) holds the money in trust for the cestui que trust, who is the child, and has a fiduciary obligation to expend it only for the child's benefit  the money does not belong to the next of friend, custodian or guardian, Thompson v. Korupp, 440 So.2d 68 (Fla. 1st DCA 1983), nor may the next of friend, custodian or guardian contract away the child's right to support. Armour v. Allen, 377 So.2d 798 (Fla. 1st DCA 1979); Isaacs v. Deutsch, 80 So.2d 657 (Fla. 1955); (4) any non-volunteer stranger has a common law cause of action against either parent for the cost of necessities provided a child because of the parent's neglect to meet his or her legal parental duties to support that minor child. See generally In re S.M.G., 313 So.2d 761 (Fla. 1975); Weinstein v. Weinstein, 148 So.2d 737 (Fla. 3d DCA 1963); (5) a child of lawful age and under no legal disability has the legal right to make the decision to enforce, and when to enforce, or not to enforce, its own legal rights; and (6) one parent of a child, as such, does not have the legal right or standing to enforce the child's cause of action or to collect support money from the other parent after the child is of age and is under no other legal disability.[3]
A parent seeking to enforce the obligation of the other parent to pay support for a minor child, even when acting in a proper capacity as custodian, guardian, next of friend, etc., is in a peculiar predicament because both parents owe the minor child a duty of support. Martin v. Martin, 480 So.2d 683 (Fla. 5th DCA 1985), rev. denied, 491 So.2d 279 (Fla. 1986). Normally A does not have a right to sue B to enforce B's legal duty to do an act which A has the same legal duty to perform. In such cases A must perform the duty and is relegated to an action to seek contribution from the joint obligor B.
In cases, such as this one, the mother is not alleging and seeking a contribution from the father for sums advanced by her beyond her own legal responsibility and out of necessity and used for the actual support of a minor during the period for which the father owes a legal duty of child support. One parent, in her own right and merely because she is a parent, has no standing to collect support money due sua juris children from the other parent. In this case neither the mother, nor HRS on her behalf, has alleged a cause of action based on the theory of seeking from the father a contribution for support provided by the mother to a dependent minor child out of necessity and beyond the mother's own legal duty; nor is a cause of action pleaded for reimbursement for a non-obligated non-volunteer third party (such as HRS) for discharging a parent's legal obligation for support. The mother in this case, through HRS, is merely attempting to collect delinquent child support due a sua juris child from its father.
Appellee father's motion for attorney's fees on appeal under section 61.16, Florida Statutes, is granted. If the mother had brought this action and prevailed, she could have received attorney's fees under this statute, and conversely in the same setting, if the father prevailed, he would be entitled to attorney's fees. When HRS under statutory authority steps into the mother's shoes in the place and stead of, and as the surrogate and advocate of, the mother, institutes an action against a father, in fairness to the father, when the father prevails, the result should be the same. As statutory assignee-subrogee of the mother, *656 HRS should assume the responsibilities that go with an assertion of the rights and remedies. See Judge Farmer's explanation in H.R.S. v. Crossdale, 585 So.2d 481, 482-83 (Fla. 4th DCA 1991). The attorney's fees aspect of this cause alone is remanded for the trial court to consider the evidence adduced by the parties as to financial resources of both parties and the reasonable value of the legal services performed by the attorney for the father in defending this action, and to order payment of a reasonable amount of attorney's fees, suit money and the cost to the father of defending this action and appeal. Rogers v. Cooper, 575 So.2d 266 (Fla. 1st DCA 1991); H.R.S. v. Crossdale, 585 So.2d 481 (Fla. 4th DCA 1991). But see, H.R.S. v. Harvey, 593 So.2d 611 (Fla. 2d DCA 1992).
AFFIRMED.
GOSHORN, C.J., concurs.
W. SHARP, J., dissents with opinion.
W. SHARP, J., dissenting.
I respectfully dissent from the majority opinion's continued adherence to Cronebaugh v. VanDyke, 415 So.2d 738 (Fla. 5th DCA 1982), rev. denied, 426 So.2d 25 (Fla. 1983), and its award of attorney's fees pursuant to section 61.16 to Holland, the appellee, against the Florida Department of Health and Rehabilitative Services.
In this case, HRS, acting pursuant to section 409.2564(1), Florida Statutes (1991),[1] filed a suit in Citrus County, Florida in 1991, against Holland, on behalf of his former wife, McReynolds, to obtain payment of unpaid child support he owed pursuant to a 1976 Florida dissolution decree. The obligation to pay child support was expressed in a marital settlement agreement, which was incorporated into the dissolution decree. He was obligated thereunder to pay McReynolds $10 per week for each of the parties' four children, until they attained the age of twenty-one years.[2] The amount of child support was increased in 1977 to $65 per week. In 1979, after an earlier effort to collect arrearages, Holland was ordered to pay $10 per week on his $1,641.52 total of the then unpaid support obligations. But, the age of the children at the time Holland's obligation was to cease under the judgment was never changed.
McReynolds and HRS alleged that Holland owed $6,110, which had accrued between 1986 and 1990. HRS also alleged McReynolds is receiving or might have received payment by the State of Florida for the parties' dependent children. At the time this suit was filed, all of the children were over twenty-one years of age.
Holland set forth numerous defenses which might have successfully defeated some or all of the balance of the claimed arrearages: estoppel, acquiescence, laches, payment, payment directly to the children, emancipation of the children, and McReynold's lack of actual custody of the children. But, the court did not reach any of those issues. It dismissed this lawsuit in its entirety on the ground that McReynolds and HRS, acting on her behalf, lacked standing to collect and enforce any child support arrearage which accrued after the particular child attained eighteen years of age. The parties stipulated that all but $155 accrued after the children were eighteen years of age. Holland apparently paid up the $155 he owed for pre-majority accrued arrearage.

STANDING
As explained in my dissent in Cronebaugh, I originally thought the standing issue was wrongly decided, and I continue to think so. However, in light of post-Cronebaugh *657 decisions of other district courts and changes in statutory law, I submit it is now time to recede from that case.
The Second, Third and Fourth District Courts of Appeal have all rejected the Cronebaugh view on standing. See Sprunger v. Sprunger, 534 So.2d 925 (Fla. 4th DCA 1988); State, Department of Health and Rehabilitative Services on behalf of Bachtal v. Bachtal, 517 So.2d 787 (Fla. 2d DCA 1988); Brown v. Brown, 484 So.2d 1282 (Fla. 4th DCA 1986); Newman v. Newman, 459 So.2d 1129 (Fla. 3d DCA 1984), rev. denied, 466 So.2d 218 (Fla. 1985); Massey v. Massey, 443 So.2d 294 (Fla. 3d DCA 1983); Holmes v. Holmes, 384 So.2d 1295 (Fla. 2d DCA 1980).
The First District has also rejected Cronebaugh in a case where the child support obligation was created by a marital settlement agreement rather than a dissolution decree. See Stehmeyer v. Stehmeyer, 489 So.2d 863 (Fla. 1st DCA 1986). I cannot honestly say I understand why that should be a distinction of any substance or consequence. In my view, obligations created by judgments should rate as high, if not higher, than those created by contracts between private parties. However, in this case, the child support obligations were created by both a settlement agreement and a dissolution decree.
I continue to think Cronebaugh is in conflict with the Florida Supreme Court's decision in Daugherty v. Daugherty, 308 So.2d 24 (Fla. 1975). Although Daugherty did not address specifically the former wife's standing to enforce and collect child support obligations for the parties' then nineteen-year old "child," all of the arrearage involved in that suit accrued after the "child" attained eighteen years of age. The Third District ruled in the former wife's favor, and the Florida Supreme Court affirmed its decision.
Thus, I conclude, the Fifth District stands alone in Florida with its Cronebaugh holding on standing. For the sake of uniformity, we should recede from that case. Or we should certify the conflict[3] and ask the Florida Supreme Court to make Florida's law uniform throughout the state.
Further, following our Cronebaugh decision, the Florida Legislature revised section 88.012 (the URESA statute) to provide that child support arrearages could be collected "after the child is no longer dependent." Obligations accruing prior to a child attaining majority have been enforced by this court. See Department of Health and Rehabilitative Services v. Blue, 564 So.2d 243 (Fla. 5th DCA 1990); Parrish v. Department of Health and Rehabilitative Services, 525 So.2d 1029 (Fla. 5th DCA 1988). It is not clear, however, whether post-majority (after eighteen years of age) accruals were involved in State, Department of Health and Rehabilitative Services v. Vorac, 582 So.2d 79 (Fla. 1st DCA 1991) and Bachtal. Since the age of majority in other states may be more than eighteen years,[4] it is not unlikely such interstate suits can be and are being brought in Florida.
Chapter 409, the intrastate child support enforcement statute, should be construed in harmony with Chapter 88. That statute provides, in part:
Whenever applicable, the procedures established under the provision of chapter 88, Uniform Reciprocal Enforcement of Support, ... may govern actions instituted under the provisions of this act ...
§ 409.2564(1), Fla. Stat. (1991). It would be an anomaly to have intrastate suits treated less favorably than an interstate suit. Further, section 409.2554(2) defines "dependent child" more broadly than merely over the age of eighteen, and appears to expressly authorize enforcement suits by HRS in a context which Cronebaugh would bar: "any person under the age of 21 and still in school." § 409.2554(2), Fla. Stat. (1991).
*658 Lastly, although not directly on point, I think Gibson v. Bennett, 561 So.2d 565 (Fla. 1990) expresses a continued evolution of public policy in favor of enforcing payment of child support obligations rather than throwing procedural roadblocks in the way of collection efforts. This alone should give this court cause to reassess Cronebaugh. In Gibson, the court held that section 61.17(3), as well as prior case law, makes available contempt remedies to enforce child support and alimony obligations, even though the arrearage has been reduced to a judgment, and even though the child is no longer a minor. It declared:
The courts have a duty to provide an effective, realistic means for enforcing a support order, or the parent or former spouse for all practical purposes becomes immune from an order of support.
* * * * * *
When a support obligated parent fails to make support payments, the responsibility for maintaining the child falls entirely on the custodial parent. In many instances, the custodial parent cannot shoulder the additional financial burden that rightfully and lawfully belongs to the nonpaying parent. As a consequence, the family often suffers hardships that otherwise could be avoided, and in some cases they are forced to seek aid from the state. In any event, due to the delinquency of a nonpaying parent, money from a support-dependent parent's own funds or from the state has been expended to maintain the child during minority.
561 So.2d at 570, 571.
Lack of standing to bring this lawsuit by the former wife and HRS on her behalf makes the collection of Holland's child support obligations most improbable and unlikely. As Judge Schwartz noted in Massey, the remedy of urging that adult children can sue their father for the arrearage is an "evanescent" one at best. It is questionable whether HRS would be empowered to sue on an "adult" child's behalf under chapter 409. Further, it is unrealistic to expect that a child will sue his or her parent in all cases, or even most cases, such as this one. The practical result is that post-majority "limbo" child support obligations will not be collected. That, I submit, is contrary to Florida's public policy.

APPELLATE ATTORNEY'S FEES
I submit that this court should not have awarded appellate attorney's fees to Holland "as the prevailing party," pursuant to section 61.16, against HRS. In the first place, appellate fees in dissolution cases should not be awarded on the basis of "who prevailed" on appeal. Davis v. Davis, 584 So.2d 1117 (Fla. 1st DCA 1991); Thornton v. Thornton, 433 So.2d 682 (Fla. 5th DCA), rev. denied, 443 So.2d 980 (Fla. 1983); Ludemann v. Ludemann, 317 So.2d 860 (Fla. 4th DCA 1975). Need and ability to pay and the comparative financial resources of the parties are the proper touchstones in dissolution cases for making appellate attorney's fee awards.[5] Section 61.16 expressly provides:
The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees... to the other party... .
In the majority opinion, the trial court is directed to consider what a reasonable fee would be for Holland's fees, and to consider the "financial resources of both parties." It is not clear to me whose resources are relevant, although it appears HRS, not McReynolds, will be liable for them. Since McReynolds used HRS to file this suit, I would wager she is unable to afford a private attorney. So perhaps, the award will be modest, if based on her resources. If HRS's resources are to be considered (disregarding the current state budget crisis), I wager HRS's ability to pay is considerably greater than Holland's, so he should come off well and likely be paid in full.
*659 This helps illustrate why I agree with Judge Minor's dissent in Rogers v. Cooper, 575 So.2d 266 (Fla. 1st DCA 1991) that HRS should not be liable for attorney's fees under section 61.17 when filing suit, as it is required to do under section 409.2561(1). The comparison of financial resources test does not work when HRS is considered a "party." The Second DCA in Department of Health and Rehabilitative Services of State of Florida v. Harvey, 593 So.2d 611 (Fla. 2d DCA 1991) has also taken that position. Although Department of Health and Rehabilitative Services v. Crossdale, 585 So.2d 481 (Fla. 4th DCA 1991) is support for the majority opinion in this case, on that issue, it could be limited to allowing attorney's fees for filing frivolous lawsuits pursuant to section 57.105.
If HRS is liable for attorney's fee awards in enforcement of support cases under section 61.17, this will inhibit and perhaps prevent its effectiveness as the enforcement agency for support obligations in Florida. It will likely have to pay attorney's fees in every case it loses on the merits, even though brought in good faith, and even though the suit is not frivolous. Hitting HRS with such unbudgeted and unforeseen attorney's fees in such suits as this will greatly inhibit its effectiveness and be a giant step backwards for this state in collecting child support from nonpaying parents.
NOTES
[1] Some such cases, such as Newman v. Newman, 459 So.2d 1129 (Fla. 3d DCA 1984), rev. denied, 466 So.2d 218 (Fla. 1985), involve pre-majority arrearages.
[2] For example the cause of action for support due from one parent to a minor child is not extinguishable by the death of the other parent for the simple reason that the other parent does not own the cause for child support and it can be enforced by others acting on behalf of the minor child.
[3] See, e.g., Sprunger v. Sprunger, 534 So.2d 925 (Fla. 4th DCA 1988).
[1] Section 409.2564(1), Florida Statutes (1991) provides:

In each case in which regular child support payments are not being made as provided herein, the department shall institute, within 30 days after determination of the obligor's reasonable ability to pay, action as is necessary to secure the obligor's payment of current support and any arrearage which may have accrued under an existing order of support....
[2] This is a "limbo" dissolution judgment as described in my dissent in Cronebaugh because it predates the statutory change in 1973 of the age of majority in Florida from twenty-one years to eighteen years. See § 743.07, Fla. Stat. (1991).
[3] Fla.R.App.P. 9.030(a)(2)(A)(iv).
[4] See, e.g., Stokes v. Maris, 596 So.2d 879 (Miss. 1992) (age of majority is 21); Marino by Marino v. Marino, 411 Pa. Super. 424, 601 A.2d 1240 (Pa.Super. 1992) (age of majority is 21); Kelley v. Ryals Services, Inc., 585 So.2d 1371 (Ala. 1991) (age of majority is 19).
[5] See Askegard v. Askegard, 584 So.2d 47 (Fla. 1st DCA 1991); Bromante v. Bromante, 577 So.2d 662 (Fla. 1st DCA 1991); Lord v. Lord, 566 So.2d 35 (Fla. 2d DCA 1990); Pirino v. Pirino, 558 So.2d 171 (Fla. 5th DCA 1990); Lester v. Lester, 547 So.2d 1241 (Fla. 4th DCA 1989).