TERRY LEE JEFFERSON, APPELLANT, v. CONSTANCE J. GOODWIN, RESPONDENT.

No. 27938

March 27, 1997

934 P.2d 264

*Hamilton D. Moore*, Las Vegas, for Appellant.

*Stewart L. Bell*, District Attorney, *Edward W. Ewert*, Deputy District Attorney, and *John B. Squires*, Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court reducing child support arrearages to judgment. The defendant-appellant claims that the district court should have dismissed the action because the district attorney had no authority to seek arrearages on behalf of an adult child who had not been the recipient of welfare benefits. We disagree and affirm the district court's ruling.

### FACTS

Constance J. Goodwin ("Goodwin") and Terry Lee Jefferson ("Jefferson") were married for nearly three years. This union produced a daughter, Misty Jo Jefferson ("Misty"). In their decree of divorce, Jefferson was ordered to pay $150.00 per month in child support. Goodwin claims that Jefferson did not make any of the payments.

When Misty was twenty-five years old, Goodwin, through the district attorney's office, filed a petition pursuant to the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA") in Clark County district court to collect $27,750 in unpaid child support from Jefferson. That figure represents the amount Jefferson was obligated to pay from the time of the divorce in 1970 until Misty turned eighteen in 1985.

The district court judge referred the matter to a hearing master. The master concluded that because the statute of limitations had run on most of Goodwin's claim, she was only entitled to $7,950.00. Notwithstanding Jefferson's objections, the master recommended that a judgment be entered against Jefferson for that amount. The district court approved the master's recommendation.

Soon thereafter, Jefferson filed a motion for relief on the ground that the judgment was void. The master recommended a denial of Jefferson's motion, and the district court ratified that recommendation. Jefferson appeals both rulings.

## DISCUSSION

Jefferson argues, citing Hedlund v. Hedlund, 111 Nev. 325, 890 P.2d 790 (1995), that Nevada district attorneys are not vested with the authority to pursue child support arrearages on behalf of an adult child who has never been dependent upon the state. In *Hedlund,* the sole issue on appeal was whether a district attorney had the authority to represent a custodial parent in an action to modify an existing child support order when the obligor parent was current on his or her child support obligations. This court held that RURESA[1]

> requires district attorneys, upon appropriate request, to take legal action against a nonsupporting parent to establish parentage, to establish the obligation of support, and to enforce the payment of support. Contrary to Sandra's contention, nothing in the statute grants a district attorney the authority to represent custodial parents in actions to *modify* the amount of child support after the obligation of support has been established.
>
> . . . .
> . . . Under her interpretation [of NRS 125B.150], any parent collecting child support would have the district attorney's office as a personal counsel whenever she or he wanted to litigate an issue involving child support. NRS 125B.130(3) expressly states that the district attorney renders a public service and represents the state, not the parent or child. It is clear that the public service to be rendered . . . is to ensure that nonsupported children do not become an economic burden on the state.

[1]NRS Chapter 130 embodies Nevada's version of RURESA. NRS 130.110 provides that "all duties of support, including the duty to pay arrearages, are enforceable by a proceeding under this chapter." NRS 130.220 requires that RURESA orders comply with Chapter 125B of NRS.

NRS 125B.150 was amended in 1995. The then-existing version provided, in pertinent part:

**Assistance by district attorney to establish parentage and obligation of support and to enforce payment of support; . . . .**

1. The district attorney . . . shall take such action as is necessary to establish parentage of the child and locate and take legal action against a deserting or nonsupporting parent of the child when requested to do so by the custodial parent or a public agency which provides assistance to the parent of child. . . .

. . . .

3. The district attorney and his deputies do not represent the parent or the child in the performance of their duties pursuant to this chapter and chapter . . . 130 . . . of NRS, but are rendering a public service as representatives of the state.

*Id.* at 328, 890 P.2d at 792 (court's emphasis).[2] In that case, the court concluded that the children were not in need of state aid because their father was current on child support. *Id.* Therefore, the court opined that the district attorney's involvement constituted a burden on state resources rather than, as the legislature intended, a method of relieving the state of such a burden. *Id.* This court affirmed the district court's decision to dismiss the case and stated that Sandra could initiate an action to modify pro se or retain private counsel. *Id.*

Jefferson claims that this case is similar to *Hedlund* because Misty is not now and has never been in need of state assistance. Thus, he claims that just as in *Hedlund,* the district attorney's representation in this case would constitute a burden on state resources because the district attorney does not seek to recover anything for the state.

We disagree with Jefferson's interpretation of *Hedlund.* Jefferson correctly states that NRS 125B.150(3) states that the district attorney renders a public service and represents the State, not the parent or child. However, in accord with *Hedlund,* it is clear that the public service to be rendered is to ensure that the custodial parent does not become or remain an economic burden on the State.

Moreover, statutory authority for state representation in the instant action can be found in NRS 125B.150(1) and in NRS Chapter 130. NRS 125B.150(1) states that a district attorney shall take necessary legal action against a nonsupporting parent "when requested to do so by the custodial parent." NRS 125B.150(1) (1993) (amended 1995).

NRS 130.030 provides that "the purposes of this chapter are to improve and extend by reciprocal legislation the enforcement of duties of support." NRS 130.110 provides that "*all* duties of support, including the duty to pay arrearages, are enforceable by a proceeding under this chapter." (Emphasis added.)

Furthermore, NRS 130.042 provides that "it is immaterial if the person to whom a duty of support is owed is a recipient of public assistance," and NRS 130.160(1) allows the district attorney to collect fees for services rendered in appropriate cases.

Thus, we conclude that Goodwin has the statutory remedy of pursuing arrears in child support under RURESA and that the district attorney properly pursued unpaid child support arrearages on her behalf.

---

[2]In response to *Hedlund,* the 1995 Legislature amended NRS 125B.150(1) to allow the district attorney to take legal action to adjust an obligation of support.

Jefferson also argues that Goodwin does not have standing to seek child support arrearages for an adult child. Jefferson cites *Cronebaugh v. Van Dyke*, 415 So. 2d 738 (Fla. Ct. App. 1982), and *Department of Health v. Holland*, 602 So. 2d 652 (Fla. Ct. App. 1992), in support of his position. In both cases, Florida's Fifth District Court of Appeals held that "child support is a right that belongs to the child," *Cronebaugh* at 741; *Holland* at 655, and that one parent does not have the legal right or standing to enforce the child's cause of action or to collect support money from the other parent after the child is of age. *Holland* at 655; *Cronebaugh* at 740. We believe that reliance on these cases is misplaced because they involved "post-majority enforcement of *post*-majority arrearages." *Holland* at 654 (court's emphasis); *Cronebaugh* at 740.

We choose to adopt the generally accepted rule that where a child has been supported during his or her minority by a single parent, any right of action for reimbursement from the noncontributing parent after the child attains majority belongs to the parent who provided that support and not to the child. *Stapel v. Stapel*, 601 P.2d 1176, 1178 (Kan. Ct. App. 1980) (citations omitted).

We therefore conclude that the district court properly determined Goodwin has standing to sue for arrearages which accrued during Misty's minority.

Jefferson asks this court for attorney's fees and costs. This request is denied.

Based on the foregoing, we affirm the district court's judgment.