763 So.2d 1119 (1999)
Jamie BARDOL and Lori Bardol, Appellants,
v.
Mary MARTIN, Appellee.
No. 98-2918.
District Court of Appeal of Florida, Fourth District.
December 22, 1999.
Jerome L. Tepps of Jerome L. Tepps, P.A., Fort Lauderdale, for appellants.
Marc H. Brawer of the Law Office of Marc H. Brawer, Sunrise, for appellee.
GUNTHER, J.
The appellants seek reversal of the final judgment entered in favor of the appellee, their mother. On appeal, the appellants argue the trial court erred in granting a summary judgment determining that a cause of action for retroactive child support does not exist. We affirm.
The appellants are the twin adult daughters of the appellee, who abandoned them in 1981. They were raised by a third party, who is not a party to this action. The day before their eighteenth birthday, the appellants filed a petition seeking past due child support from the appellee. This petition was dismissed for lack of standing, and the appellants filed an amended petition after reaching majority.
The appellee filed a motion for summary judgment, alleging that the appellants would be entitled to support retroactive only to the date of the petition, i.e., one day. The appellants conceded that if the trial court was unwilling to recognize an action for retroactive child support prior to the date of the petition, summary judgment was proper. The trial court granted the summary judgment on the basis that, other than in paternity cases, child support may be awarded retroactively only to the date of the petition.
The appellants, in the present case, are seeking retroactive child support, i.e., support *1120 which accrued prior to the filing of their petition. In Florida, claims for retroactive child support have traditionally been sought in dissolution or paternity actions. Regarding dissolution, courts generally have only awarded retroactive child support back to the date the petition for support or modification of existing support was filed. See Waite v. Kennedy, 724 So.2d 572 (Fla. 3d DCA 1998); Gherardi v. Gherardi, 712 So.2d 1236 (Fla. 4th DCA 1998); Anderson v. Anderson, 609 So.2d 87 (Fla. 1st DCA 1992). On the other hand, in paternity actions, retroactive child support has generally been awarded to the mother, often dating back to the birth of the child, which is when the child's needs arose. See Mason v. Reiter, 564 So.2d 142 (Fla. 3d DCA 1990); Watkins v. Jackson, 487 So.2d 99 (Fla. 4th DCA 1986); Coleman v. Mackey, 424 So.2d 170 (Fla. 3d DCA 1983); McQueen v. Stratton, 389 So.2d 1190 (Fla. 2d DCA 1980).
Recently, the legislature has added section 61.30(17), Florida Statutes (1997), regarding retroactive child support. However, the parties agree this newly enacted statute does not apply in the present case. Rather, on appeal, the appellants argue that the present case is more analogous to a paternity action, wherein retroactive child support can be awarded. The appellee responds that this case is not a paternity action, and as such there is no authority upon which to award the appellants retroactive child support.
The appellants rely upon two cases to assert a cause of action exists. First, the appellants rely upon H.R.S. v. Holland, 602 So.2d 652 (Fla. 5th DCA 1992), wherein HRS, acting on behalf of the mother, attempted to enforce the child support obligation of the father imposed in a prior divorce decree. See id. at 654, 656. According to the Fifth District, "There are several sources for the duty to pay child support. The duty can be strictly legal based on common law or statute (§ 61.13(1), Fla. Stat.) or it can be strictly contractual, or it can be a confusion of both." Id. at 654 (citations omitted).
However, Holland is easily distinguished from the present case. In Holland, the children were over eighteen and a divorce decree ordering the father to pay child support was the basis for the support obligation. As such, the dispute in Holland was over arrearages rather than retroactive support. Yet, in the present case there is not a court decree entitling the appellants to support as the basis for this action.
The appellants also rely upon Fowhand v. Piper, 611 So.2d 1308 (Fla. 1st DCA 1992), wherein the First District upheld an award of retroactive child support to the mother in a paternity action. See id. at 1311-12. However, the present case is not a paternity action and as such is distinguishable from Fowhand.
Thus, the appellants fail to carry their burden on appeal by citing any Florida case recognizing an adult child's standing to sue a parent for retroactive child support absent a previous court order establishing a child support obligation. This is not a case where a custodian or government agency is seeking reimbursement for funds expended on the children during their minority. While the dissent argues the appellants have a common law right to retroactive support, our research reveals no case anywhere in which adult children have successfully maintained a suit against their parents for retroactive support. In fact, it seems there would be good policy reasons why an adult child would not have standing to sue a parent under these circumstances. The appellants do not allege the care-giver failed to adequately provide for the appellants, and the record does not indicate the appellants are seeking reimbursement on their care-giver's behalf. Rather, it appears they are seeking reimbursement for expenses they did not incur, which would amount to a windfall. As an intermediate appellate court, our function is to correct errors based on statutory law and judicial precedent, not create judicial *1121 policy by clarifying the law and promulgating new rules of law. See Whipple v. State, 431 So.2d 1011, 1014 (Fla. 2d DCA 1983). If the Florida Supreme Court wishes to recognize an adult child's standing to sue a parent for retroactive child support under the circumstances presented by this case, then that is its prerogative. To that end, we certify the following question to be of great public importance:
DO ADULT CHILDREN HAVE STANDING TO BRING SUIT ON THEIR OWN BEHALF AGAINST A PARENT FOR RETROACTIVE CHILD SUPPORT, ABSENT AN AGREEMENT OR COURT ORDER PREVIOUSLY ESTABLISHING A CHILD SUPPORT OBLIGATION?
We affirm the trial court's order.
AFFIRMED.
GROSS, J., concurs.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
The parental duty to support one's minor children is so elemental as to predate law itself. In State ex rel. Airston v. Bollinger, 88 Fla. 123, 101 So. 282 (1924), the court acknowledged that:
"These obligations and rights are imposed and conferred by the laws of nature; and public policy, for the good of society, will not permit or allow the father to irrevocably divest himself of or to abandon them at his mere will or pleasure."
101 So. at 283 [c.o.]. Similarly in Bezanilla v. Bezanilla, 65 So.2d 754, 756 (Fla.1953), the court said that:
"The highest spiritual and moral concepts, as well as the law, demand that the father, as far as his means reasonably permit, support them and this is a continuing duty until the children reach their majority or become self-supporting."
65 So.2d at 756. In Isaacs v. Deutsch, 80 So.2d 657 (Fla.1955), the court placed this duty before any necessity of judicial recognition or agreement of the parent, declaring:
"There can be no doubt that the obligation of the father to support his minor children is a `continuing' one.... It exists irrespective of a divorce decree awarding their custody to the mother. It may be enforced by the courts in a manner inconsistent with a contractual obligation...."
80 So.2d at 658 [c.o.].[1]
In fact so clear is the duty of parental support that the legislature has made it a crime to fail to do it. Section 856.04(1) unambiguously states that:
"Any man ... who shall willfully withhold from them ... the means of support, or any mother ... who shall willfully withhold from [her children] the means of support, shall be guilty of a felony of the third degree...."
§ 856.04(1) Fla. Stat. (1997).[2] The state could hardly punish the failure to carry out a duty that one is not clearly obligated to perform. Yet there is nothing in any statute specifically providing that parents have a duty to support their minor children, on pain of the breach of which they are subject to criminal penalties.[3]
*1122 The duty of child support thus being a priori, it is hardly surprising that both the common law and the statutes readily enforce the obligation. As the third district said in Ash v. Coconut Grove Bank, 443 So.2d 437, 438 (Fla. 3rd DCA 1984):
"Under the common law, a parent or legal guardian has the sole obligation to provide his child with the necessities until he reaches the age of majority." [c.o.]
In Ramey v. Fassoulas, 414 So.2d 198, 200 (Fla. 3rd DCA 1982), the same court simply found it part of "our law":
"Indeed, it has been embedded in our law for centuries that the father and now both parents or legal guardians of a child have the sole obligation of providing the necessaries in raising the child, whether the child be wanted or unwanted." [e.s.]
See also Zolonz v. Zolonz, 659 So.2d 451, 452 (Fla. 4th DCA 1995) ("Until the child reaches majority, the law of the state of Florida imposes on a parent the obligation to support his or her minor children."); Ciociola v. Ciociola, 302 So.2d 462, 463 (Fla. 3rd DCA 1974) ("We think that it has been determined in Florida that a father has an enforceable obligation to support his children irrespective of a judgment of divorce."). [c.o.] This notion was summed up in Department of Health & Rehabilitative Services v. Holland, 602 So.2d 652 (Fla. 5th DCA 1992), where the court stated:
"There are several sources for the duty to pay child support. The duty can be strictly legal based on common law or statute (§ 61.13(1), Fla.Stat.) or it can be strictly contractual, or it can be a confusion of both."
602 So.2d at 654 [c.o.]. That court also recognized the undeniable proposition that the support is for the benefit of the child:
"a child for whom child support is due from a parent is the equitable and legal beneficiary and the real party in interest and in legal contemplation owns the cause of action to recover monies due for its support ..."
602 So.2d, at 654-655. While I concede that Holland involved children born during a marriage, the principles I have just quoted are surely not limited to children who have the good fortune to select parents who happen to be wed to one another.[4]
To be sure, the legislature has adopted various statutory mechanisms of enforcement of the support obligation for differing *1123 contexts. As regards married parents who have decided to terminate their relationship, for example, section 61.09 provides that:
"If a person having the ability to contribute to the maintenance of his or her spouse and support of his or her minor child fails to do so, the spouse who is not receiving support or who has custody of the child or with whom the child has primary residence may apply to the court for alimony and for support for the child without seeking dissolution of marriage, and the court shall enter an order as it deems just and proper."
The express terms of this statute address the rights and duties of the parents only as between themselves, giving the custodial parent (but not anyone else) the right to apply to the court for an award of support. This is consistent with the general purpose of chapter 61, which is to provide a statutory mechanism to decide the property and monetary claims between a wife and husband, as well as their mutual responsibilities with regard to their children. The right of one parent to recover a share of the support necessary to raise a child is undeniably to ensure that the child is supported by both parents. But it is equally to indemnify the custodial parent for those amounts expended on behalf of the noncustodial parent. Filling a similar role is section 61.13(1)(a), which authorizes the judge in a dissolution of marriage case to "order either or both parents who owe a duty of support to a child to pay support in accordance with the guidelines in s. 61.30."
For parents who have never married, the legislature has given us chapter 742. It is no accident that section 742.011 provides that "any child," among others, "may bring proceedings in the circuit court, in chancery, to determine the paternity of the child when paternity has not been established by law or otherwise." [e.s.] Section 742.031(1) adds that "[t]he court shall order either or both parents owing a duty of support to the child to pay support pursuant to s. 61.30." [e.s.] Thus whether children are born in or out of marriage, section 61.30 has previously been made available as a statutory means of enforcing duties of child support.
Yet it is also plain that the legislature does not occupy the area of child support to the exclusion of common law development. As the court made clear in Fisher v. Guidy, 106 Fla. 94, 142 So. 818, 821 (1932):
"Unless changed by statute, courts of equity have inherent jurisdiction to control and protect infants and their property... [and] in the absence of express provision, such jurisdiction is not taken away by provisions of law conferring like power on other courts."
See also Duke v. Duke, 109 Fla. 325, 147 So. 588, 589 (1933); Guinta v. Lo Re, 159 Fla. 448, 31 So.2d 704, 705-706 (1947) (Terrell, J., dissenting). Indeed the legislature itself has often emphasized that its enactments on child support are supplementary to the common law, not in place of it. See, e.g., § 88.012 ("The state, therefore, exercising its police and sovereign powers, declares that the common-law and statutory remedies pertaining to ... nonsupport of dependent children shall be augmented [emphasis supplied] by [the additional statutory remedies]."); and § 88.041 ("The remedies herein provided are in addition to and not in substitution for any other remedies.").
Recently, the legislature enacted a provision that the majority holds is inapplicable to the present dispute, apparently because the parties concede that it is too new to govern the outcome of their case. Section 61.30(17) newly states in part that:
"In an initial determination of child support, whether in a paternity action, dissolution of marriage action, or petition for support during the marriage, the court has discretion to award child support retroactive to the date when the parents did not reside together in the same household with the child, not to exceed a period of 24 months preceding the filing of the petition, regardless of *1124 whether that date precedes the filing of the petition."
Under this provision unpaid child support may reach as far back as two years before the filing of an initial claim for such support. On its face this provision would seem exactly fitted for this case, allowing these children to recover unpaid support for the two years preceding their claim.
This legal concession of the parties is not discussed by the court today. It is apparently deemed controlling simply because it is a concession. Of course if it represented a concession of fact, as opposed to law, I would be much more inclined to embrace it fully. As a concession of what the law holds, however, I do not feel quite so bound to imprint a misimpression of private parties as to the proper understanding of a mixture of common law and statutes involving something so basic as the obligations of parents to children. For what we do in deciding a casethat is, what we actually say in a formal opinion, as well as what we omit to saybecomes precedent for the next case. The singular importance of the right of minor children to support thus being what it is, and recognizing that legitimate claims may be foregone or scarce resources wasted in finding out whether a statute relating to such support is immediately effective, I should proceed in spite of the concession to ascertain whether section 61.30(17) might nonetheless be applicable in some way to claims for retroactive support accruing prior to its passage.
All statutes have some specific goal or aim. I take the concession of the parties in this case to arise from a belief that section 61.30(17) is in effect both a newly created entitlement to retroactive support and a new limitation as to how far back it may reach. If it were indeed a new entitlement and a new limitation, nonretrospective application would be presumed in the absence of a clear statement by the legislature to the contrary. State. Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55 (Fla.1995) (general rule is that absent clear legislative direction substantive statutes operate only prospectively but that procedural/remedial statutes may operate retrospectively). Here the legislature's only statement is that the statute became effective on July 1, 1997.[5]
Quite apart from when the statute is to be applied, I do not think the legislature has at all created any new rights to support in section 61.30(17); instead it has merely sought to narrow the field in which an old entitlement can operate. As I have endeavored to demonstrate by the earlier cases and statutes, child support is a preexisting and unavoidable duty of parenthood. It depends on no prior enactment of legislation or consent of the parents, for it precedes all such sources of obligations.
The common law of this state now recognizes that the duty of support is for the benefit of and belongs to the children themselves, not their parents. Holland, 602 So.2d at 654-655. So too does the statute pertaining to children born out of wedlock. § 742.011 (any child may bring proceedings under paternity statute). Indemnifying custodial parents for the non custodial parent's share of support expenses is secondary to the child's own right to insist that a parent provide such support. See Gammon v. Cobb, 335 So.2d 261 (Fla.1976) (mother of child born outside marriage is merely trustee to receive funds paid as support by noncustodial parent and simply convert them into relief for the children.). It follows that the statutory remedies to quantify the amounts owed by noncustodial parents to custodial parents for the expenses they have advanced do not displace any common law or statutory rights of children to recover support accruing during their minority.
Read in that light, section 61.30(17) is hardly the establishment of a new right to support, retroactive or otherwise. These children had the right of support from the moment they were born. As children born *1125 outside of marriage, it is well established that their right of support includes retroactive support. See Johns v. Richards, 717 So.2d 1103 (Fla. 4th DCA 1998) (trial court abused its discretion by not ordering child support retroactive to date of child's birth); Coleman v. Mackey, 424 So.2d 170 (Fla. 3d DCA 1983), Mason v. Reiter, 564 So.2d 142 (Fla. 3d DCA 1990) (trial court abused its discretion in denying mother's claim for retroactive support); Girten v. Andreu, 698 So.2d 886, 888 (Fla. 3d DCA 1997) (child's needs begin at birth, and trial court abused its discretion in denying claim for retroactive support).
Moreover, before section 61.30(17) was adopted, the right of these children to retroactive child support was limited only by the general statute of limitations.[6] In State of Florida, Department of Health And Rehabilitative Services v. West, 378 So.2d 1220 (Fla.1979), the court reviewed a holding that the 4-year statute of limitations barred an action for retroactive child support against the father of a child born outside marriage. Section 95.11(3)(b), Florida Statutes (1975), provided that actions relating to paternity must be commenced within 3 years. There was no similar limitation on actions for children born within marriage. In concluding that the statute invidiously discriminated against children whose parents had not married, the court held that:
"The only proper application of the statute of limitations to child support claims would be to those claims that have accrued in the past but which are not adjudicated. The state could properly say that a claim for child support not made within a certain time after it accrued is barred. However, since the duty of support continues throughout the minority of the child, new causes of action are being created each day that the natural father does not provide support. This duty of future support cannot be barred for illegitimate children if it is allowed for legitimate children."
378 So.2d at 1228. Therefore, recognizing that the general statute of limitations applies to the claim of these children for support during their minority, the children had a pre-existing right to seek retroactive child support within that general limitations period of four years.
And equally clearly, because the right to four years of retroactive unpaid support had already accrued, the legislature could notsimply by enacting section 61.30(17)lessen the amount of support that had already vested as a result of the lapse of the limitations period, when section 61.30(17) was adopted. See Firestone Tire & Rubber Company v. Acosta, 612 So.2d 1361 (Fla.1993) (repeal of statute of repose could not affect defendant's vested right not to be sued); Melendez v. Dreis & Krump Manufacturing Co., 515 So.2d 735 (Fla.1987) (repeal of statute of repose could not be construed to operate retrospectively as to cause of action accruing before effective date of statutory amendment); cf. Walter Denson & Son v. Nelson, 88 So.2d 120, 122 (Fla.1956) (legislature has power to increase prescribed limitations period and to make it applicable to existing causes of action if change in law is effective before cause of action is extinguished by force of preexisting statute); and Mazda Motors of America, Inc. v. S.C. Henderson & Sons, Inc., 364 So.2d 107, 108 (Fla. 1st DCA 1978), cert. denied, 378 So.2d 348 (Fla.1979) (party has right to have statute of limitations period vested once it has completely run and barred a claim).
That means that these children had a right, which predates the recent legislative enactment of section 61.30(17), to recover retroactive support from their parents, limited only by the period of the applicable statute of limitations. Because this right already existed and the legislature is presumed *1126 to know the existing law, it is exceedingly unlikely that the legislation can be understood to have created any new entitlement to such support.
As I see the text and legal context of this legislation, it can only have been meant to further restrict future accruing claims for unpaid support by reducing the period for statutory claims from four years to two years. Instead of limiting retroactive support to the general four year limitations period, the statute newly constrains future enforcement claims to the narrower two year period accruing before an initial action for support is commenced. But as I have stated such a substantive abridgment of their vested right to accrued retroactive support cannot be applied retrospectively against these children. See Foley v. Morris, 339 So.2d 215 (Fla.1976) (legislation shortening limitations period could not be applied retrospectively to claims maturing before its enactment).
Thus if the concession of these parties is that the statute is not applicable to reduce past maturing retroactive claims within the general limitations period, then I accept their concession. If instead it is conceived to suggest that the new statute is inapplicable, however, because it created a new statutory right to support, then I do not agree that their concession correctly states the law. I think it is manifest that these children have stated a cause of action for retroactive child support.[7]
The court rests its decision today on its perception that "the present case is not a paternity action"by which I take the court to refer to an action within the ambit of chapter 742. The court seeks thereby to distinguish Fowhand v. Piper, 611 So.2d 1308 (Fla. 1st DCA 1992). If this action is not a classic paternity action with a genuine issue as to whether the male defendant actually fathered the children, it nevertheless partakes of all the elements of such a claim except for that one.
While I recognize that the word "paternity" has its origin in pater, the Latin root meaning father, and that the death of this father renders the discrete issue of fatherhood as moot as only death can make it, the consequent support claim of these children born outside of marriageis in all other respects functionally indistinguishable from what usually turns out to be the principal issue in many "paternity" actions, i.e. the amount of support due for the children. The unwillingness of the majority to characterize this case as for all intents and purposes a paternity action in this respect is quite uncharacteristically rigid for this courtespecially where such a fundamental interest of minor children is at issue.
In the end, I think it plain from the foregoing analysis that it does not much matter anyway, either to our law or me, whether this action be deemed to arise under chapter 742. These children have a common law right to retroactive support within the period of the statute of limitations. And as I have also pointed out twice, section 742.011 specifically allows the affected children to initiate an action under the paternity statute. The right of these children to support by their parents during their minority is not circumscribed by anything contained in chapter 742 merely augmented by it. Thus while in one sense this might not be an action to ascertain whether an identified defendant actually fathered the children in question, in another sense it is surely an action within the reach of the paternity statute for the support of children whose parents did not marry.
*1127 And even if were somehow true and important that "this is not a paternity action," the majority has not shown any authority for the proposition that the duty of a parent to support a child can be avoided or excused simply because a nonexclusive statutory remedy is unsuitably invoked. Do the majority seriously think that a court should deny support to a child otherwise entitled to it simply because the papers stating the claim refer to the wrong statute? This one time theory of crabbed pleading inflexibility was extinct even before the common law evolved to recognize that mothers, too, had to support their children.
Finally, the majority is unwilling to recognize the cause of action for support clearly given these children because of the majority's perception that payment of such support would amount to a windfall. This is the first time I have heard it argued that a judgment for unpaid child support clearly accruing during a child's minority would amount to a windfall. This issue arose in the context of a legal conclusion that the plaintiffs lacked a cause of action for such support, so the existence of evidence to support the claim is clearly irrelevant. Moreover, I should think that any question of a windfall is an affirmative defense, subject to pleading and proof by the defendant, rather than to a judicial guess as to the ultimate outcome of the case on the merits.
Beyond these procedural niceties, however, I cannot understand the recovery of unpaid child support by children after they reach their majority as a windfall. It is entirely possible that if such support had been regularly paid as it accrued during minority the standard of living of these children would have been improved. Were they living on the edge of poverty during their minority? Were they deprived of intangibles beyond food and shelter the payment of which would have enabled them to achieve aspects of ordinary life widely enjoyed by even the less economically favored in our society? Would the payment of such support clearly owed now enable them to acquire advanced education or improve their skills for the job market? The answers to these inquiries do not seem to me to amount to windfalls for children in the circumstances of these plaintiffs.
I would reverse.
NOTES
[1] Of course these old statements of the duty referred only to the father because they predate the modern recognition of the de jure equality of the sexes. There is no doubt that today they would rephrased to specify both parents. Ramey v. Fassoulas, 414 So.2d 198, 200 (Fla. 3rd DCA 1982) (now both parents of minor child have sole obligation of support).
[2] Unless otherwise indicated, all citations to statutes are to Florida Statutes (1997).
[3] Section 744.301 states that a mother and father are the natural guardians of their own children (as well as those they adopt). In a related provision, the legislature has required that the "guardian of a minor shall exercise the powers of a plenary guardian." See § 744.361(1). Because the duty to support one's children is so long and so well established, apparently the legislature has thought it unnecessary to add a provision in any statute that among the duties of the natural guardians of minor children is the obligation to support them.
[4] I recognize that for many years the common law was not understood to require a father to support children he fathered outside marriage. See e.g. Ford v. Loeffler, 363 So.2d 23 (Fla. 3rd DCA 1978); Carpenter v. Sylvester, 267 So.2d 370 (Fla. 3rd DCA 1972); Carpenter v. Sylvester, 267 So.2d 370 (Fla. 3rd DCA 1972); Clarke v. Blackburn, 151 So.2d 325 (Fla. 2nd DCA 1963). These decisions, however, were effectually overruled in Gammon v. Cobb, 335 So.2d 261, 265 (Fla.1976), which flatly states that:

"the public policy of the State of Florida for recognition and support of illegitimate children by the natural father ... has been expressed in other statutes and decisional law, notwithstanding [section 742.011 as then construed to preclude a paternity action by a woman married to another man]."
Similarly the United States Supreme Court has made illegitimacy a suspect classification which is rarely valid. See Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974) (entitlement to Social Security disability insurance benefits); New Jersey Welfare Rights Organization v. Cahill, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973) (welfare benefits); Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972) (right of child to compensation for wrongful death of father); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (right of unwed father to custody of children upon death of mother); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (right of child to sue for wrongful death of mother). In light of more recent constitutional interpretation, our understanding of the common law has correspondingly metamorphosed into an understanding that both parents have a duty to support their child, whether born in or out of marriage.
[5] See Ch. 97-170, § 81, Laws of Fla.
[6] See § 95.11(3)(k), Fla. Stat. (1997) (4 years limitations period on actions for child support).
[7] Apart from the fact that our decision in Johns was not yet decided when the trial court in this case entered the summary judgment, the cases cited by the trial court to conclude that the children do not have a claim for retroactive support are all dissolution of marriage cases and therefore inapposite for that reason alone. It also follows that the trial court's decision is insufficiently sensitive to the body of law discussed above that plainly recognizes the right of children born outside marriage to seek support in their own name for any period not barred by the general statute of limitations.