IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 23, 2012 Session

## JORDAN ASHTON DANELZ
### v.
## JOHN GAYDEN, M.D.

**Appeal from the Shelby County Juvenile Court**
**No. N6141   Dan H. Michael, Special Judge**

_____

**No. W2012-01667-COA-R3-JV - Filed March 25, 2013**

_____

In this appeal, an adult child seeks an award of retroactive child support from his biological father. The adult child filed a petition to establish parentage, seeking retroactive child support and other child rearing costs. After genetic testing, the juvenile court found that the respondent is the petitioner's biological father, but it declined to grant an award of retroactive child support. Both parties appealed. Eventually there were two appeals and two remands. After the last remand, the juvenile court determined that the adult child's biological father was also his legal father, but held that the petitioner adult child could not receive an award of retroactive child support under the parentage statutes. The adult child then filed this third appeal. We reverse in part, holding that the parentage statutes provide for an award of retroactive child support to the adult child complainant. We vacate the finding as to the adult child's legal father and remand the case for further proceedings on the award of relief against the biological father.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is Reversed in Part, Vacated in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Adam N. Cohen and Mitchell D. Moskovitz, Memphis, Tennessee for Petitioner/Appellant Jordan Ashton Danelz

Andrew C. Clarke, Memphis, Tennessee for Respondent/Appellee John Gayden, M.D.

## OPINION

### FACTS AND PROCEEDINGS BELOW

This is the third appeal in this case. The facts in this parentage action are also discussed in this Court's prior opinions.[1]

During 1983, Mary Deborah Danelz ("Mother') was married to Richard Danelz, and at the same time had an intimate relationship with Respondent/Appellee John Gayden, M.D. In 1984, Mother gave birth to a son, Petitioner/Appellant Jordan Ashton Danelz ("Jordan"). Apparently Richard Danelz was unaware of Mother's relationship with Dr. Gayden; Richard Danelz signed Jordan's birth certificate and raised Jordan as his son.

When Jordan was still a young boy, Mother and Richard Danelz initiated divorce proceedings. In Mother's divorce complaint, she asserted that Jordan was a child of the marriage. Mother and Richard Danelz eventually entered into a marital dissolution agreement, in which Mother was designated as Jordan's primary residential parent and Richard Danelz was ordered to pay child support for the benefit of Jordan and his sister. A final decree of divorce was entered in 1995, incorporating by reference the parenting provisions of the marital dissolution agreement.

On November 14, 2002, within months after Jordan reached majority, he filed this parentage action in the Juvenile Court of Shelby County to establish that Dr. Gayden is his biological father. Jordan's parentage petition sought a retroactive award of child support dating back to Jordan's birth, as well as an award of attorney fees.

In the proceedings prior to the first appeal, Jordan filed an affidavit by Mother stating that she and Dr. Gayden had a sexually intimate relationship during the pertinent time period. The trial court found, *inter alia*, that Mother was judicially estopped from making a statement that was contrary to the sworn pleadings she filed in her divorce action, in which she asserted that Jordan was the child of her marriage to Richard Danelz. On this basis, the trial court dismissed Jordan's parentage petition without permitting DNA testing. Jordan appealed, and this Court reversed the dismissal and remanded for further proceedings, including DNA testing. ***Danelz v. Gayden,*** No. W2003-01649-COA-R3-JV, 2004 WL 1838571 (Tenn. Ct. App. Aug. 17, 2004) (hereinafter referred to as ***Danelz I***).

---

[1]***See Danelz v. Gayden*** ("***Danelz I***"), No. W2003-01649-COA-R3-JV, 2004 WL 1838571 (Tenn. Ct. App. Aug. 17, 2004) and ***Danelz v. Gayden*** ("***Danelz II***"), No. W2010-02308-COA-R3-JV, 2011 WL 2567742; 2011 Tenn. App. LEXIS 365 (Tenn. Ct. App. June 29, 2011).

On remand, the DNA testing showed that there is a 99.992% probability that Dr. Gayden is Jordan's biological father. In the ensuing proceedings, Dr. Gayden filed numerous motions to dismiss, seeking to have Jordan's claim for child support dismissed on a variety of bases. These motions to dismiss were denied.[2] In May 2008, the trial court made a factual finding that Dr. Gayden is Jordan's biological father. Subsequently, the trial court also held that Richard Danelz was an indispensable party to the proceeding, pursuant to Rule 19.01 of the Tennessee Rules of Civil Procedure. However, Richard Danelz was not brought in as a party at that time.

Dr. Gayden continued to file motions to dismiss and motions to reconsider the denial of his motions to dismiss. In March 2010, the trial court entered an order on Dr. Gayden's fifth motion to dismiss, in which it issued findings of fact and conclusions of law. The trial court held that an adult child has the right to file an action to establish parentage, even if the adult child's mother is judicially estopped from pursuing such an action. However, the trial court held that Jordan could not receive an award of retroactive child support from his biological father; it concluded that child support is owed only to the parent or custodian of the child. In reaching this conclusion, the trial court relied on Tennessee's parentage and child support statutes, as well as *Lichtenwalter v. Lichtenwalter,* 229 S.W.3d 690 (Tenn. 2007). *See* Tenn. Code Ann. § 36-5-101(c)(2)(A). The trial court held that the statutes gave it no authority to make an award of retroactive child support to the petitioner adult child. On this basis, the trial court dismissed Jordan's claim for child support, but granted him an award of attorney fees in the amount of $50,789.08, determined as of September 2010. Jordan appealed.

On appeal, this Court noted that the parties had not added Richard Danelz as a party as ordered, so the trial court's order was not a final judgment. The appeal was held in abeyance and the matter was remanded for entry of a final order. On remand, the trial court held that its dismissal of Jordan's claim for child support rendered moot the order requiring the parties to add Richard Danelz as an indispensable party. The intermediate appellate court then took up this second appeal.

This Court issued its opinion in the second appeal on June 29, 2011. *See Danelz v. Gayden*, No. W2010-02308-COA-R3-JV, 2011 WL 2567742; 2011 Tenn. App. LEXIS 365 (Tenn. Ct. App. June 29, 2011) (hereinafter referred to as *Danelz II*). On appeal, the Court held that the trial court was required to determine whether Dr. Gayden is Jordan's legal father, as well as his biological father, given the fact that the divorce court had previously indicated that Richard Danelz is Jordan's father during the 1995 divorce proceedings. *Danelz II*, 2011 WL

---

[2] At one point, the trial court granted Dr. Gayden's request for permission for an interlocutory appeal. This Court, however, denied the request for an interlocutory appeal. Dr. Gayden's request for permission to appeal to the Tennessee Supreme Court was also denied.

2567742, at *5, 9; 2011 Tenn. App. LEXIS 365, at *15-16.  The Court indicated that if Dr. Gayden were held to be Jordan's legal father, then the trial court would go on to determine whether Jordan is entitled to receive child support, relying in part on *In re T.K.Y.*, 205 S.W.3d 343, 351 (Tenn. 2006).  *Danelz II*, 2011 WL 2567742, at *9.  The intermediate appellate court remanded the matter to the trial court for the legal parent analysis, and also vacated the $50,789.08 award of attorney fees to Jordan as premature.  *Danelz II*, 2011 WL 2567742, at *9.

The trial court conducted a hearing on remand.  It held that Richard Danelz was an indispensable party.  Subsequently, Dr. Gayden filed yet another motion to dismiss Jordan's claim for child support.  In May 2012, the original parties and Richard Danelz, appearing *pro se*, presented arguments on the issue of Jordan's legal father.[3]

On June 19, 2012, the trial court issued a lengthy and thoughtful order on the issues before it.  In the order, the trial court first noted that the proof was undisputed that Dr. Gayden is Jordan's biological father.  It then looked to Tennessee's adoption and termination statutes, and specifically the definition of "legal parent" found in Tennessee Code Annotated § 36-1-102(28).  Utilizing the two-step process outlined in *In re T.K.Y.*, 205 S.W.3d 343, 349 (Tenn. 2006), the trial court held that Dr. Gayden is Jordan's legal father.

The trial court then framed the issue before it as "whether or not Jordan has the right to seek retroactive child support from his newly discovered biological father while the true oblige[e], his mother, is judicially estopped from enforcing her right."  It noted first that the parentage statutes state expressly that, under certain circumstances, an adult child may bring an action to establish parentage, citing Tennessee Code Annotated §36-2-305(b).  It then observed that, once parentage is established, the parentage statutes instruct the court to address custody and visitation, and Tennessee Code Annotated § 36-2-311(a)(11)(A) requires the court to determine child support.  The trial court then stated:  "Having granted Jordan relief under Tennessee Code Annotated §36 chapter 2 this court now turns to chapter 5 of this title to determine whether child support is due."  Relying on a provision in the child support statutes, Tennessee Code Annotated § 36-5-102(c)(2)(A), and citing the Tennessee Supreme Court's decision in *Lichtenwalter,* the trial court came to the same conclusion it had reached prior to remand, namely, that the statute mandated that child support "shall be paid either to the clerk of the court or directly to the spouse, or other person awarded [] custody of the child or children" or be paid to "the appropriate person or agency providing care or support for the child." *See* Tenn. Code Ann. §§ 36-5-102(c)(2)(A), -101(d)(8).  The trial court commented that the actions of Jordan's mother deprived both Jordan and Dr. Gayden of the opportunity

---

[3]The trial court noted that Richard Danelz did not take a position as to Jordan's action against Dr. Gayden, except to state his belief that Dr. Gayden should "man up."

to have a relationship while Jordan was a child. It explained its concerns about a ruling that Jordan, as an adult, can recover retroactive child support from his biological father:

The overarching design of the child support laws in Tennessee place a clear obligation on parents to support their minor children. Those child support payments are paid to the custodial parent or custodian of the child, despite the fact that child support payments are intended for the benefit of the child, Tenn. Code Ann. § 36-5-101(b)(2)(A)(i) (2007).

> To find that a child has an individual right to the actual support paid by an obligor would set into motion a scenario not contemplated by the legislature under current law. Each and every paternity case and custody decision that resulted in a support order would require the tribunal to put into place a system of protections that would guarantee the minor child's income is safe from a careless or deceitful custodial parent. Perhaps a trust would be established or a conservatorship. The custodial parent could then submit an accounting before demanding a withdrawal for everyday living expenses. There is no doubt that Jordan had a right to support from his parents during his minority and he received that support in full. But to whom is a child support debt owe[d] when the child is no longer a minor, an existing order is not in place to be enforced and the oblige[e] is barred by judicial estoppel because of her fraudulent actions in another court?

> Given the clarity with which the Court in *Lichtenwalter* speaks and the plain language of the existing child support statutes this Court chooses to leave it to the "wisdom of the legislature["] to sort out Jordan's claim. Consequently, this Court finds that Jordan is not entitled to a hearing under the statute to determine child support. His plea is dismissed.

Thus, the trial court concluded that the statutes did not expressly authorize it to make an award of retroactive child support to an adult child such as Jordan, and so it declined to make such an award. In addition, the trial court also denied any outstanding requests for attorney fees. Jordan now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Jordan argues that the trial court erred in dismissing his claim for child support and other child-rearing costs. On cross-appeal, Dr. Gayden contends that the trial court erred in holding that he is Jordan's legal father and disputes the trial court's earlier award of attorney fees to Jordan.

In a parentage action, the trial court's factual findings are afforded a presumption of correctness and will not be overturned on appeal unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2006); **Bogan v. Bogan**, 60 S.W.3d 721, 727 (Tenn. 2001); **State ex rel. Wray v. Collins**, No.W2006-00119-COA-R3-JV, 2007 WL 836810, at *2; 2007 Tenn. App. LEXIS 141, at *5 (Tenn. Ct. App. Mar. 20, 2007). We review the trial court's conclusions of law *de novo*, with no presumption of correctness. **Carvell v. Bottoms**, 900 S.W.2d 23, 26 (Tenn. 1995); **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993).

## ANALYSIS

We consider first the issue of child support. On appeal, Jordan argues that the trial court erred in dismissing his claim against Dr. Gayden for child support and other child-rearing costs. Jordan points out that, once paternity has been established, the pertinent provision of the paternity statutes, Tennessee Code Annotated § 36-2-311(a)(11)(A), requires the trial court to make a determination of child support. He contends that the trial court erred in relying on the **Lichtenwalter** case to hold that the right to an award of child support belongs exclusively to the child's parent or guardian and that the court cannot grant an award of child support to an adult child, noting that **Lichtenwalter** did not involve a parentage or paternity action. **See Lichtenwalter v. Lichtenwalter**, 229 S.W.3d 690 (Tenn. 2007). He stresses this Court's holding that "[t]he purpose of the paternity statute is to require a biological father to support his child." **Shell v. Law,** 935 S.W.2d 402, 408 (Tenn. Ct. App. 1996). Jordan argues that Tennessee caselaw supports a holding that an adult child such as Jordan is entitled to such relief, citing **Berryhill v. Rhodes,** 21 S.W.3d 188 (Tenn. 2000) and **Chance v. Gibson,** 99 S.W.3d 108 (Tenn. Ct. App. 2002).

In response, Dr. Gayden contends that there is no statutory authority for awarding retroactive child support directly to Jordan under the child support statutes that are referenced in the parentage statues, Chapter 5 of Title 36. Echoing the reasoning of the trial court, Dr. Gayden relies heavily on Section 36-5-101(c)(2)(A), which states that the "order or decree of the court may provide that the payments for the support of such child . . . shall be paid either to the clerk of the court or directly to the spouse, or other person awarded the custody of the child . . . ." Tenn. Code Ann. § 36-5-101(c)(2)(A). Dr. Gayden suggests that Jordan does not have a personal right to child support, arguing that the right to receive child support payments vests in the custodial parent or guardian once due, and cites **Lichtenwalter** in support of this assertion. Dr. Gayden also argues that Jordan is not legally entitled to receive child support because the costs associated with raising him were borne by Mother and Richard Danelz, not by Jordan. For these reasons, Dr. Gayden insists that the trial court correctly refused to award retroactive child support to Jordan.

"In England and in early American common law, the duty of a parent to support his or her children, regardless of age, was a moral obligation, not a legal one. Thus, in many jurisdictions, there was no legal obligation to support children absent a statute imposing such an obligation." *In re Conservatorship of Jones,* No. M2004-00173-COA-R3-CV, 2004 WL 2973752, at * 5 (Tenn. Ct. App. Dec. 22, 2004). As observed by the trial court, in Tennessee, child support is governed by statute. *Lichtenwalter,* 229 S.W.3d at 692. The underlying action in this case is a parentage or paternity action, so we look to those statutes for the authority to award child support and the limits of such authority.

The interpretation of statutes presents a question of law, reviewed on appeal with no presumption of correctness afforded to the trial court's interpretation. *Myers v. AMISUB (SFH), Inc*., 382 S.W.3d 300, 308 (Tenn. 2012).

We interpret the statutory provisions at issue in accordance with established principles of statutory construction. In construing a statute, our duty "is to ascertain and give effect to the intention and purpose of the legislature." *Jordan v. Knox County*, 213 S.W.3d 751, 763 (Tenn. 2007). "To that end, we start with an examination of the statute's language. . . ." *Myers,* 382 S.W.3d at 308. Whenever possible, we should glean the legislative intent from the plain and ordinary meaning of the statutory language. *Jordan,* 213 S.W.3d at 763. A statute should be read naturally and reasonably, presuming that the legislature says what it means and means what it says. *See In re Samaria S.*, 347 S.W.3d 188, 203 (Tenn. Ct. App. 2011).

Tennessee parentage statutes provide:

(1) A complaint to establish parentage of a child may be filed by:
    (A) The child, if the child has reached the age of majority. . . .

Tenn. Code Ann. § 36-2-305(b)(1)(A). The parentage statutes specify that an adult child must bring the parentage action within the statutory time deadlines. *See* Tenn. Code Ann. § 36-2-306. Once parentage is established by genetic testing, the statutes set forth certain actions to be taken by the trial court:

(a) Upon establishing parentage, the court shall make an order declaring the father of the child. This order *shall* include the following:. . . .

Tenn. Code Ann. § 36-2-311(a) (emphasis added). Section 36-2-311 states that the trial court is to include in its order various identifying information about the child's mother and father, a determination as to the child's name on the birth certificate, and determinations as to custody, visitation, and parental access. Tenn. Code Ann. § 36-2-311(a)(1)-(10). The statute

also directs the trial court to include in its order a "[d]etermination of child support" pursuant to Chapter 5 of Title 36. Tenn. Code Ann. § 36-2-311(a)(11)(A). Section 36-2-311 details the considerations for the trial court in making an award of retroactive child support and sets forth reasons for which the trial court may deviate from the child support guidelines. Tenn. Code Ann. § 36-2-311(a)(11). In addition, it directs the trial court to include in the order a "[d]etermination of the liability for counsel fees to either or both parties. . . ." Tenn. Code Ann. § 36-2-311(a)(14).

The statutes setting forth the procedure for the genetic testing to determine parentage reiterate that the trial court is to award child support once parentage has been established. *See* Tenn. Code Ann. § 24-7-112(b)(2)(D)(ii) ("[T]he court shall, upon motion by the other party, establish that individual as the father of the child in question, and *shall* order child support as required by the provisions of title 36, chapter 5.") (emphasis added).

Thus, Tennessee's parentage statutes provide that an adult child may bring a parentage action against an alleged biological father, and set forth the relief available to a successful complainant. We note that Sections 36-2-311 and 24-7-112 both use the word "shall" with respect to the inclusion of child support in the parentage order. "The use of the word 'shall' in [the] statutes indicates that the legislature intended the requirements to be mandatory, not directory." *Myers,* 382 S.W.3d at 308 (citing *Bellamy v. Cracker Barrel Old Country Store, Inc*., 302 S.W.3d 278, 281 (Tenn. 2009)). *See also Stubbs v. State,* 393 S.W.2d 150, 154 (Tenn. 1965) ("When 'shall' is used . . . it is ordinarily construed as being mandatory and not discretionary."). This is particularly true where the object of the statutory language is "the essence of the thing to be accomplished." *Myers,* 382 S.W.3d at 309 (quoting 3 Norman J. Singer & J.D. Singer, *Statutes and Statutory Construction* § 57:2 (7th ed. 2008)).

Here, the object of the parentage statutes is not only to give the complainant the knowledge of the true parentage of the child at issue, but also to provide concrete relief that reflects the responsibility concomitant with being a biological parent. Section 36-2-311 sets forth that relief, using language that indicates that Tennessee's legislature intended the relief to be mandatory once parentage is established. As noted above, "[t]he purpose of the paternity statute is to require a biological father to support his child." *Shell,* 935 S.W.2d at 408. *See also Berryhill,* 21 S.W.3d at 190-91 ("Our paternity and child support statutes . . . evince a policy that children should be supported by their fathers . . . . The legal duty of support exists in all cases.") (citations omitted). It would be anomalous indeed if we were to interpret the parentage statutes to provide that an adult child complainant such as Jordan may gain only

knowledge of his parentage through a parentage petition but may not be awarded the concrete relief that is the object of the statute, namely, child support.[4]

The trial court below correctly observed that Section 36-2-311 specifically references the child support statutes in chapter 5. These statutes include Tennessee Code Annotated § 36-5-101, which provides for the payment of child support to the spouse or other person with custody of the child at issue. The learned trial judge drew a negative inference from the fact that these statutes have no express provision for the payment of child support to an adult child, and on that basis concluded that there was no authority for the court to make such an award.

When the legislature has enacted more than one statute relating to the same subject or sharing a common purpose, the statutes "shall be construed together ('*in pari materia*') in order to advance their common purpose or intent." *Carver v. Citizen Utils*., 954 S.W.2d 34, 35 (Tenn. 1997). Thus, we must attempt to construe the general child support statutes, setting forth how and to whom child support is to be paid, along with the mandate in the parentage statutes that child support be included in the trial court's parentage order, in a manner that advances the common purpose of both statutes. "Under the generally accepted rules of statutory construction, a special statute, or a special provision of a particular statute, will prevail over a general provision in another statute or a general provision in the same statute." *Keough v. State*, 356 S.W.3d 366, 371 (Tenn. 2011). In this case, we must construe the child support statutes in Chapter 5 of Title 36 together with the parentage statutes. In doing so, we decline to draw the negative inference drawn by the trial court below, and instead find that the lack of any provision in the child support statutes for payment of child support to an adult child does not nullify the child support mandate in the parentage statutes.[5] In interpreting the parentage statutes, we are required to enforce the legislature's clear mandate. When the legislature included in the parentage statutes a specific provision allowing an adult child to bring a parentage action, it gave no indication that the relief to be awarded to an adult child

---

[4]As noted by the trial court, some of the relief listed in Section 36-2-311 would not be appropriate to include in the parentage order where the complainant is an adult child, such as custody, visitation and parental access. Tenn. Code Ann. §36-2-311(a)(9) and (10). While we are charged with responsibility for enforcing the legislature's directive, we have also "noted that statutes must be construed 'with the saving grace of common sense.'" *Bernatsky v. Designer Baths,* No. W2012-00803-COA-R3-CV*,* 2013 WL 593911, at *21 (Tenn. Ct. App. Feb. 15, 2013) (Farmer, J., concurring) (quoting *State ex rel. Maner v. Leech*, 588 S.W.2d 534, 540 (Tenn. 1979)). In that vein, we decline to interpret Section 36-2-311 as requiring the trial court to adjudicate custody, visitation, and parental access where the complainant is an adult child. These considerations, however, would not apply to other relief listed in Section 36-2-311, such as child support.

[5]Parenthetically, we note that no special provisions need be made where the beneficiary of the monetary relief is an adult who can receive the monies directly.

would be any different from the relief awarded to any other complainant. The legislature did not choose to carve out an exception in the parentage statutes for an adult child complainant, and we decline to read one into the statutes.

Dr. Gayden emphasizes, and the trial court relied on, the Supreme Court's decision in *Lichtenwalter*, which involved a dispute between two divorced parents. *Lichtenwalter*, 229 S.W.3d 690. In their divorce, the parents in *Lichtenwalter* had agreed on a child support arrangement well below the amount set forth in the child support guidelines. *Id.* at 692. After the youngest child reached majority, the custodial mother filed an action against the father to collect the child support arrearage. *Id.* The trial court found no arrearage and the mother appealed to the intermediate appellate court. *Id.* The intermediate appellate court calculated the father's child support obligation in accordance with the child support guidelines and thus found an arrearage, but required the father to pay the arrearage to the adult children instead of the complainant mother. *Id.* The mother appealed to the Tennessee Supreme Court, which granted the appeal to consider only the portion of the intermediate appellate court's order that required the father to pay the arrearage to the adult children instead of the mother. *Id*.

On appeal, the *Lichtenwalter* Court observed that "[c]hild support payments are typically paid to the custodial parent despite the fact that child support payments are intended for the benefit of the child." *Id.* The child support statute, the Court noted, "does not change the party to whom the unpaid amount must be paid based upon the current age of the children for whom the amount were due." *Id.* at 693. It held that the right of recovery for the arrearage "is a vested right that lies with the parent to whom the child support is due." *Id.* Therefore, the *Lichtenwalter* Court ordered the trial court to enter an order requiring the obligor father to pay the arrearage to the complainant mother, instead of to the parties' adult children. *Id.* at 694.

We do not read *Lichtenwalter* as precluding Jordan's claim for child support in this case. Unlike the case at bar, *Lichtenwalter* involved a claim by a custodial parent; the parties' adult children were not parties to the litigation, and there was no reason for the Court to contemplate a claim by an adult child. The claim for child support at issue in *Lichtenwalter* arose under the divorce statutes which, unlike the parentage statutes, include no provision permitting an adult child to file his own petition for relief. We must conclude that *Lichtenwalter* simply does not address an independent claim by an adult child, specifically permitted under the parentage statutes.

The honorable trial court below expressed concern about how a ruling in Jordan's favor on the issue of child support might "set in motion a scenario" that would affect the nature of child support, perhaps even requiring protections similar to a conservatorship for typical

child support paid to a custodial parent or guardian. We must respectfully disagree. Tennessee courts have often stated the obvious, that child support is for the benefit of the child, with no untoward effect on the requirements for the recipient of the child support payments. *See, e.g., Lichtenwalter,* 229 S.W.3d at 692 ("[C]hild support payments are intended for the benefit of the child"); *Berryhill,* 21 S.W.3d at 191 ("[A] child's right to support cannot be bargained away by a parent to the child's detriment."); *A.B.C. v. A.H.*, No. E2004-00916-COA-R3-CV, 2005 WL 74106, at *7; 2005 Tenn. App. LEXIS 18, at *18-19 (Tenn. Ct. App. Jan. 13, 2005) ("The child is the beneficiary of the child support payments made by the non-custodial parent.") (citing *Rutledge v. Barrett*, 802 S.W.2d 604, 607 (Tenn. 1991)); *Hite v. Hite*, No. 03A01-9511-CV-00410, 1996 WL 600333, at *3; 1996 Tenn. App. LEXIS 661, at *9 (Tenn. Ct. App. Oct. 16, 1996) ("The father's duty of support is owed to the child, not to the mother.") (citing *Pickett v. Brown*, 462 U.S. 1, 103 S. Ct. 2199 (U.S. 1983)). We do not foresee that Tennessee courts' view of the nature of child support will be altered by a ruling that recognizes the relief mandated under the parentage statutes for any complainant, including an adult child complainant.

Prior Tennessee cases have indicated that an adult child complainant under the parentage statutes may recover the statutorily-mandated relief, including child support. In *Chance v. Gibson*, 99 S.W.3d 108 (Tenn. Ct. App. 2002), a mother and her adult daughter filed an action to establish parentage and recover child support from the alleged biological father. *Id.* at 109. The appellate court in *Chance* held that the mother was judicially estopped from seeking child support from the alleged father. *Id.* at 111. It held, however, that the adult daughter was not judicially estopped from bringing the claim for retroactive child support against the alleged biological father. *Id.* at 111. The appellate court in *Chance* remanded the matter for genetic testing to ascertain if the respondent was the biological father of the adult daughter petitioner. *Id.* at 111. If the respondent were found to be the biological father, the appellate court held, "the Trial Court shall then make a determination as to what monies, if any, should be paid by [the alleged father] as child support, medical expense incident to birth, attorney fees, and an appropriate disposition of any amount found to be owing" by the biological father. *Id.* at 112. Thus, the *Chance* Court specified that the trial court should calculate the award of child support to be made to the only complainant who was not judicially estopped, namely, the adult daughter. *Id.* at 111-12. *See also Berryhill v. Rhodes,* 21 S.W.3d 188 (Tenn. 2000) (involving a parentage action by the unwed mother of the parties' adult daughter). Addressing retroactive child support in a parentage action, the Supreme Court in *Berryhill v. Rhodes* stated:

> The paternity statutes provide a process by which the putative father can be identified. Once identified, the father is required to furnish support and education for the child . . . . The legislature has provided for retroactive awards by statute and by the incorporation of the Child Support Guidelines

promulgated by the Tennessee Department of Human Services, Child Support Services Division. *Retroactive child support is available whether the child is a minor or whether the child has reached the age of majority and brings the claim within the time permitted by the statute.*

*Berryhill*, 21 S.W.3d at 191-92 (citing § 36-2-103(b)(1), which was repealed and replaced by § 36-2-306) (emphasis added).

A holding that an adult child may recover retroactive child support under state parentage statutes finds support in other jurisdictions as well. This conclusion was reached by the Ohio Supreme Court in *Carnes v. Kemp*, 821 N.E.2d 180 (Ohio 2004), under parentage statutes similar to those in Tennessee. As in Tennessee, the Ohio parentage statutes permitted an adult child to file a parentage action within several years after reaching majority. *See* Ohio Rev. Code Ann. § 3111.05 (parentage action may be filed within five years after child reaches majority); *compare* Tenn. Code Ann. § 36-2-306 (parentage action may be filed within three years after child reaches majority). Based on this Ohio statute, the *Carnes* court found that the juvenile court had jurisdiction to award retroactive child support to the adult child complainant:

> [I]t would be illogical to extend the statute of limitations beyond the child's minority if the legislature contemplated that only current support be awarded in a paternity action . . . . [B]y extending the statute of limitations beyond the age of majority, when the parent no longer has any duty of support, it appears the legislature envisioned back child support would be awarded in a parentage action.

*Carnes,* 821 N.E.2d at 183. In contrast to Tennessee's parentage statutes, the relevant Ohio statute merely permitted the parentage order to include an award of child support, and did not mandate it. *See* Ohio Rev. Code Ann. § 3111.13(c); *compare* Tenn. Code Ann. § 36-2-311(a)(11)(A). The Ohio Supreme Court determined that an adult child complainant could receive an award of retroactive child support in a parentage action because "the statutory language dictate[s] this result" and because biological parents "should not be able to shirk their responsibility as parents simply because the child may not have contacted or found the parent during the child's younger years." *Carnes*, 821 N.E.2d at 184.

Other jurisdictions are in accord under various state parentage statutes. *See Tedford v. Gregory*, 959 P.2d 540 (N.M. Ct. App. 1998)(adult daughter permitted to seek retroactive child support against her alleged father in parentage action); *In re Janzen*, 228 P. 3d 425, 429 (Kan. Ct. App. 2010) (upholding award of retroactive child support in parentage action brought by adult daughter). *See generally* Lani P. Shaw, Note & Comment: *Show Me the*

*Money!: Analyzing an Adult Child's Standing to Recover Retroactive Child Support Payments*, 48 How. L. J. 1053 (Spring 2005) (arguing in favor of a cause of action for an adult child to receive retroactive child support from a biological parent who failed to pay an appropriate share of support).

Dr. Gayden argues that Jordan is not entitled to child support from his biological father because Jordan did not pay his own child-rearing expenses; they were paid by Mother and Richard Danelz. The record supports this factual assertion. We presume that the legislature was aware of this typical circumstance when it mandated child support as part of the relief to be accorded to any complainant in a parentage action; nevertheless, it chose to make no exception to the child support requirement where the complainant is an adult child. A similar argument was made in the New Mexico case of ***Tedford v. Gregory,*** cited above. In ***Tedford,*** the biological father argued that retroactive child support should not be awarded to his adult daughter because, during her minority, she was financially supported by another man and would be "unjustly enriched" by an award of retroactive support from the respondent father. ***Tedford,*** 959 P.2d at 547. The New Mexico Supreme Court rejected this argument and held that the biological father's duty to support his daughter "is unaffected by any money she may have received from other sources" because the award of retroactive child support was "authorized by statute and does not constitute double recovery." ***Tedford,*** 959 P.2d at 548 (finding that offsetting the support owed by biological father by the amount of the financial contributions made by non-father would reward the biological father "for participating in a constructive fraud and failing to support his daughter."). ***See also Mougey v. Salzwedel***, 401 N.W.2d 509, 512 (N.D. 1987) (stepparent's financial support does not affect the biological parent's legal obligation to support his child). ***But see Bardol v. Martin***, 763 So. 2d 1119, 1120 (Fla. Ct. App. 1999) (refusing to award child support to adult child because adult child would receive a windfall). We agree with the reasoning in ***Tedford***. Based on the mandate contained in Section 36-2-311(a)(11), we are not persuaded by Dr. Gayden's argument.[6]

On cross-appeal, Dr. Gayden argues that the trial court erred in holding that Dr. Gayden is Jordan's legal father as well as his biological father. The trial court made this ruling at the behest of this Court, which remanded the case after the second appeal with instructions to

---

[6]We do not address any related actions by other parties, such as tort actions. These are sometimes spawned by the complicated circumstances that arise when a mother is not candid with all parties about the potential father of her child. ***See, e.g., Hodge v. Craig***, No. M2009-00930-COA-R3-CV, 2010 WL 4024990, at *12 n.11 (discussing paternity fraud) (reversed in part by ***Hodge v. Craig,*** 382 S.W.3d 325 (Tenn. 2012)). In the Tennessee Supreme Court's decision in this case, it observed that the "inexhaustible and ever-changing complications in human affairs are constantly presenting new questions and new conditions which the law must provide for. . . ." ***Hodge,*** 382 S.W.3d at 346 (citing ***Box v. Lanier***, 79 S.W.1042, 1045 (Tenn. 1904)).

add Richard Danelz as an indispensable party and determine whether Dr. Gayden or Richard Danelz is Jordan's legal father. ***Danelz II***, 2011 WL 2567742, at *4, 6, 9. In doing so, the ***Danelz II*** court cited ***In re A.N.F.,*** No. W2007-02122-COA-R3-PT, 2008 WL 4334712, at *15-16 (Tenn. Ct. App. Sept. 24, 2008) and ***Shell v. Law***, 935 S.W.2d 402 (Tenn. Ct. App. 1996), and directed the trial court on remand to utilize the two-step analysis in ***In re T.K.Y***, 205 S.W.3d 343, 349 (Tenn. 2006), to determine which of the two men is Jordan's legal father.[7]

Upon reflection, we must conclude that, under the specific facts in this case, Dr. Gayden's obligation to pay child support is unaffected by the identity of Jordan's legal father, and Richard Danelz's rights are not affected by Jordan's parentage petition or his request for an award of child support. Jordan's claims in this case arise under the parentage statutes, which define the term "father" for purposes of a parentage action as "the biological father," regardless of marital status.[8] ***See*** Tenn. Code Ann. §§ 36-2-302 (3) and (5). Once the respondent is found to be the biological father, the parentage statutes direct the trial court to determine his child support obligation. ***See*** Tenn. Code Ann. § 36-2-311(a)(11)(A) ("Upon establishing parentage, the court shall make an order declaring the father of the child. This order shall include the following: . . . Determination of child support. . . ."); ***see also*** Tenn. Code Ann. § 24-7-112(b)(2)(D)(ii) ("[A]fter test results showing a statistical probability of paternity of ninety-nine (99%) or greater, the court shall, upon motion by the other party, establish that individual as the father of the child in question, and shall order child support. . . ."). Thus, the obligation to pay child support under the parentage statutes depends only on a determination of the child's biological father, irrespective of the identity of his legal father.[9]

---

[7]We note that an earlier decision by this Court, ***Chance v. Gibson,*** apparently also thought it necessary to consider the ex-husband who was not the biological father; when the ***Chance*** Court remanded the case to the trial court for a determination of the child support award to the adult daughter complainant, it directed the trial court to "include a consideration of the payments made by [the ex-husband] for [the adult daughter's] support and whether [the ex-husband] should be reimbursed for payments he has made." ***See Chance,*** 99 S.W.3d at 112. ***Chance*** cited no authority for this instruction to the trial court.

[8]The statute defines "father" as the biological father "of a child born out of wedlock." Tenn. Code Ann. § 36-2-302(3). The term "child born out of wedlock" is in turn defined as "a child born to parents who are not married to each other when the child was born." Tenn. Code Ann. § 36-2-302(1). Thus, even though Mother was married to Richard Danelz when Jordan was born, Jordan is a "child born out of wedlock" for purposes of the parentage statutes.

[9]We note that in situations where a voluntary acknowledgement of paternity has been executed, the parentage statutes are not triggered. Tenn. Code Ann. § 36-2-301.

Moreover, under the facts of this case, an order requiring Dr. Gayden to pay child support pursuant to the parentage statutes does not affect any rights or obligations of Richard Danelz with respect to Jordan. Because Jordan is an adult child complainant, no issues of custody, visitation or parental access arise. The Juvenile Court does not have before it claims related to adoption or termination of parental rights. This renders inapplicable two of the cases cited in *Danelz II*, namely, *In re T.K.Y.*, 205 S.W.3d at 346 (involving custody, visitation, child support, and termination of parental rights); *In re A.N.F.*, 2008 WL 4334712, at *1-3 (involving custody dispute, voluntary acknowledgment of paternity, and petition to terminate parental rights). Moreover, in *Shell v. Law,* also cited in *Danelz II,* the child's biological father stipulated to the termination of his parental rights. *Shell,* 935 S.W.2d at 404 n.1. The appellate court in *Shell* cited this fact in support of its finding that the ex-husband was not a necessary and indispensable party, and it did not address whether he would have been an indispensable party under other circumstances. *Id.* at 410. *Shell* did not hold that the biological father's duty of support was affected by the identity of the child's legal father, and in fact implied to the contrary:

> [A] proven father owes a duty of support to his child regardless of whether he was married to the mother or whether the mother was married to another man at the time of birth . . . . [I]llegitimate children, even those legally presumed to be legitimate, but actually shown not to be the children of the husband, [are] owed a duty of support by the biological father. The purpose of the paternity statute is to require a biological father to support his child.

*Shell*, 935 S.W.2d at 407-08 (citing *Frazier v. McFerren*, 402 S.W.2d 467, 471 (Tenn. 1964), and *Bass v. Norman*, No. 164, 1989 WL 157884, at *3; 1989 Tenn. App. LEXIS 850, at *8-9 (Tenn. Ct. App. Dec. 29, 1989).

Under the facts presented in this case, we must conclude that Richard Danelz is not an indispensable party to Jordan's parentage petition and request for an award of child support under the parentage statutes. Therefore, it is unnecessary to determine whether Dr. Gayden is Jordan's legal father as well as his biological father. Accordingly, we vacate the trial court's holding that Dr. Gayden is Jordan's legal father.

Dr. Gayden argues that there is "inherent inequity" in requiring him to pay retroactive child support when he was not notified that he might be Jordan's father and was deprived of the right and opportunity to establish a relationship with the child. Citing *State ex rel. Kennamore v. Thompson*, No. W2009-00034-COA-R3-JV, 2009 WL 2632759; 2009 Tenn. App. LEXIS 587 (Tenn. Ct. App. Aug. 27, 2009), Dr. Gayden argues that permitting an adult child to bring an action for child support pursuant to a parentage action "would produce an extremely inequitable result."

We do not deny the difficulties that can arise where the identity of a child's biological father does not become known until after the child is older or, as here, grown. *See, e.g., Hodge v. Craig,* 382 S.W.3d 325 (Tenn. 2012). In this appeal, however, we are reviewing the trial court's decision that *no* adult child complainant can receive retroactive child support under the parentage statutes, regardless of the circumstances. We hold that the legislature has made this policy decision, by enacting parentage statutes that provide specifically that an adult child such as Jordan may file a parentage action, with no limitation on the type of relief he may receive.

We note that, under the parentage statutes, circumstances such as those stressed by Dr. Gayden may be taken into account in the trial court's determination of the *amount* of the award of retroactive child support. The parentage statutes state that the trial court may consider a deviation from the amount of the child support award as calculated under the child support guidelines based on the extent to which the father did not know, and could not have known, of the child; the mother's intentional failure or refusal to notify the father of the child; and the mother's attempts to notify the father of her pregnancy or the child. Tenn. Code Ann. § 36-2-311(a)(11)(A)(i-iii).

The case cited by Dr. Gayden, *State ex rel. Kennamore v. Thompson*, involved such weighing of the statutory equities between the parties, pursuant to the provisions in the parentage statutes that govern the trial court's decision on the amount of support to be awarded. *State ex rel. Kennamore,* 2009 WL 2632759, at *2-3. In the case at bar, the trial court did not reach the point of weighing the factors listed in the statute, because it held that Jordan was precluded from receiving any award of retroactive child support as a matter of law. Moreover, we note that the appellate court in *Kennamore* did not hold that retroactive child support is not permitted in *any* case where the biological father is unaware of the child; instead, it merely held that the trial court did not abuse its discretion by deviating from the child support guidelines to limit the child support award, based on the equities between the parties in that case. *Id.* at *5. This brings us to the most important distinction between *Kennamore* and the instant case, namely, in *Kennamore,* the complainant was the mother, who had withheld the child's parentage from the biological father. In this case, of course, the complainant is the adult child himself. Tennessee's parentage statute requires the trial court to make any findings on deviation from the child support guidelines based on "the best interests of the child or the equity *between the parties*," so the fact that the complainant is the adult child rather than the mother may significantly affect the trial court's weighing of the equity between the parties. *See* Tenn. Code Ann. § 36-2-311(a)(11)(B) (emphasis added). Tennessee courts have recognized that a child's interests in a parentage action are not identical to the interests of either or both of the parents, and in some cases their interests may actually conflict. *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 180-81 (Tenn. Ct. App. 2000) (citing cases).

Dr. Gayden makes two other brief arguments. First, he argues that "neither [Mother] nor Richard Danelz are entitled to testify that anyone other than Richard Danelz is [Jordan's] father and are barred by the doctrines of *res judicata* and judicial estoppel from attempting to testify otherwise." Second, he argues that this Court, in the first appeal, erroneously ordered Jordan and Dr. Gayden to submit to genetic parentage testing. Assuming *arguendo* that these arguments are properly raised in this appeal, we find them to be without merit.

In conclusion, we reverse the trial court's holding, and find that Jordan, as an adult child complainant, may recover retroactive child support pursuant to Tennessee's parentage statutes. We vacate the trial court's holding that Dr. Gayden is Jordan's legal father as it is unnecessary to determine the relief to which Jordan is due under the parentage statutes. On remand, the trial court is directed to determine the relief to which Jordan is due under the parentage statutes and the extent of such relief, including but not limited to retroactive child support and attorney fees. Jordan has requested an award of attorney fees on appeal, pursuant to Tennessee Code Annotated § 36-2-311(a)(14). Exercising our discretion, we grant attorney fees on appeal, and remand to the trial court for a determination of reasonable fees, considering all three of the appellate proceedings in this case. All other issues raised on appeal are pretermitted.

## CONCLUSION

The decision of the trial court is reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. Costs on appeal are assessed against Respondent/Appellee John Gayden, M.D., for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE